## SCHOOL DISTRICT OF OMAHA V. JOHN MCDONALD.*

### FILED APRIL 22, 1903.   No. 12,807.

1. **Contract: CONSTRUCTION.** In an action for damages for a breach of contract between a school district, in a metropolitan city, and an architect, for his services for the period of one year, the contract will be construed according to the plain import of its language, viewed in the light of the circumstances and the apparent understanding of the parties at the time it was made.

2. **Directing Verdict: MEASURE OF DAMAGES.** In such a case, where no evidence is introduced in support of the only defense properly pleaded, it is the duty of the court to construe the contract, and determine the measure of damages, and direct the jury to return a verdict accordingly.

3. **Contract an Entirety: PERSONAL SERVICES.** Where the contract is entire, is one for personal services only and the breach of it is total, the measure of damages is what the plaintiff would have earned, less what it would have cost him to perform it according to its terms. *Brodie v. Watkins*, 33 Ark. 545; *Wirth v. Calhoun*, 64 Neb. 316.

4. **Cross-examination.** A witness can not be interrogated on his cross-examination as to the length of time it took him to perform another contract, different from and independent of the one which is the basis of the action.

5. **Non-reversible Error.** It is not reversible error to refuse to allow a defendant to introduce in evidence plaintiff's original petition, where there is no substantial difference in the statement of the facts contained therein, and in the one on which the suit is tried.

ERROR to the district court for Douglas county: WILLARD W. SLABAUGH, DISTRICT JUDGE. *Affirmed.*

*Carl E. Herring* and *John P. Breen,* for plaintiff in error.

*Howard H. Baldrige, William A. De Bord* and *Timothy J. Mahoney, contra.*

BARNES, C.

At the general election held on November 8, 1898, the school district of Omaha voted bonds for the purpose of

* Rehearing denied.   See opinion, p. 623, *post.*

creating additional high school facilities on its high school grounds known as "Capitol Square," and for the construction of three new school buildings in other places in said city. The bonds were issued and sold, and with the funds thereby provided, the board of education was authorized to secure additional high school facilities, by additions to the building already constructed, or the erection of a new building. Acting under such authority, on May 8, 1899, the board entered into a contract with John McDonald, as architect, to draw plans for and superintend the construction of a high school building, for which he was to receive as compensation a sum equal to five per cent. of its cost. Under this contract, McDonald drew the plans and specifications for a building of certain dimensions, which was to face south on the high school grounds. These plans were adopted, and McDonald was paid for his work from time to time as it progressed. However, the building provided for by these plans was never erected. It appears that theretofore a contract had been entered into between the school district and one John Latenser, as architect, to draw plans for and superintend the construction of the three school buildings above mentioned—one to be located on Cass street, one on Pacific street and one on Davenport street. It further appears that in November, 1898, the board of education, at a regular meeting, passed the following resolution:

"WHEREAS, The policy of employing an architect by the year, or for a longer term, instead of letting contracts for plans and specifications by competition, has been adopted by nearly all metropolitan school districts in this country as the wisest, best and most economical plan, such policy giving to said board the benefit of practical schoolhouse construction which open competition does not, and

"WHEREAS, The law warrants and precedent and good business judgment demands that this board should follow the policy adopted by other cities: Therefore, be it

"*Resolved,* That this board employ the services of some practical and thoroughly competent architect whose duty

it shall be to draw all plans and specifications for the alteration or remodeling of school buildings already erected, when in the judgment of the board of education of this school district such alterations or remodeling become necessary, and to draw all plans and specifications for the construction of such new buildings as may be ordered by vote of the people, or the board of education.

"And be it further resolved, that this board deems it essential to put the policy suggested by this resolution in force at once by contracting with an architect for the term of one year, commencing December 1, 1899, and upon the selection of such architect, the president and secretary of this board are instructed to at once enter into a contract with such architect for the term stated in this resolution, the basis and conditions of said contract to be the same as fixed by this resolution. Said architect shall receive, as compensation for his services, a commission of five per cent. of the total cost of the work done in the remodeling or alteration of the buildings and five per cent. of the total cost of any new buildings constructed. The compensation herein fixed shall be in full for all services rendered in drawing plans and specifications and in supervision of work. Before entering upon his duties, the architect shall file with the secretary of this board a bond in the penal sum of three thousand dollars ($3,000) for the faithful performance of his duties, such bond to be issued by some surety company and to be approved by the board. These resolutions shall in no way conflict with or annul any contracts at present existing with architects."

Thereupon John McDonald was elected by the board to the position provided for by this resolution, and on December 1 of that year entered into a contract with the school district in accordance with its terms, and by which it was further provided, that he should serve the district in the capacity of architect for the period and upon the terms and conditions following, to wit: That he should draw all plans and specifications for the alteration or remodeling of school buildings already erected, and draw all plans and

specifications for such new buildings as might be ordered by a vote of the people, or of the said board of education; that he should furnish, at his own cost and expense, all plans, specifications, details, copies and blue prints, and all alterations thereof, and all other papers and materials such as might be ordered by the board necessary and convenient for the use of the said school board, its officers, superintendents of buildings, bidders and contractors, and all such copies as should be necessary to be furnished under the laws of the state and ordinances and rules of the city of Omaha, and under the rules and regulations of the board of education then in force or thereafter to be in force during his employment. He also agreed to furnish all information desired by any interested person of or about any or all of such plans, specifications, details, copies, blue prints and alterations thereof, and other papers, and all materials therein designated or provided for, and to have a copy of each of said papers and documents at all times accessible to any member or officer of the board of education on file at the office of the board, and the plans, specifications, details and alterations thereof, and all other papers from the beginning of their drafting, it was agreed should be the absolute property of the said school district with the right to use them during the term of the contract, and at any time thereafter, and either in the form drafted and made by McDonald or in any alterative form without any liability to him or any one for such use. It was further provided that McDonald should serve the school district in such capacity for the period of one year from the 1st of December, 1899; that he should so serve the district as employee and agent solely, and be in no sense an arbiter between the school district and any contractor; and that so much of his time as the school district should desire during the existence of the contract should be at the service of the district for all purposes and in any way pertaining to the business and occupation of an architect. It was further provided that at all times during the existence of the contract McDonald should be

subject to the immediate order of the board of education, and he agreed to do and perform all the things to be done by him within the time allotted to him by the board, without regard to the cost to him, provided the time limited by the board should not be unreasonably short; and that he should do all of these things under his employment faithfully, honestly, fully and skillfully as a skillful architect. He was further required to give bond in the sum of $3,000 for the faithful performance of his duties. And in consideration of the services so rendered by McDonald, and of his full compliance with all the terms and conditions of the contract, it was agreed therein that the school district should pay him, as compensation for his services, a commission of five per cent. of the total cost of the work done in the remodeling or alteration of buildings, and five per cent. of the total cost of the new buildings ordered constructed; that this compensation should be in full for all services rendered in drawing plans and specifications and in supervision of work; and that the contract should in no way conflict with or annul any contract then in force with any architect employed by the board.

McDonald gave his bond as provided, which was duly approved, and by these acts he abandoned his contract of May 8, 1899, and agreed to give his whole time and services, if necessary, to the school district, and in all things to be subject to the orders of the board of education. On the 5th day of February, 1900, the board adopted the following resolution:

"Whereas, The records of the board of education of the school district of Omaha show that a resolution providing for the appointment of an official architect for the said board was presented on the 20th day of November, 1899, and that thereafter, and in accordance with the tenor and effect of said resolution the board entered into a pretended contract with one John McDonald as architect for said school board for the period of one year, commencing December 1, 1899.

"Now therefore, be it resolved, that said resolution and all and singular the acts of said board in or about or connected with the employment of, or the contracting with said McDonald, as architect of the school board under and in pursuance of said resolution be, and the same are hereby rescinded, set aside and held for naught, and the said McDonald is hereby released from and discharged from any and all obligations to said board that may exist under said resolution and act thereunder. And the said board of education hereby disclaims and denies any contractual relation existing between the said board and said McDonald under said resolution and premises herein."

And thereby the said McDonald was discharged from his said office and employment. It further appears that the board at the same meeting adopted another resolution wholly annulling and setting aside his May contract. McDonald was notified of the adoption of these resolutions, and at once wrote the board a letter, stating that he considered his December contract in full force; that he was ready, willing and able to perform it; and that he still considered himself the official architect of the board. An indorsement made by the attorney for the board of education appears on this letter as follows: "John McDonald considers himself official architect."

Immediately thereafter John Latenser was elected architect in McDonald's place, and entered into a contract with the school district, which was, in form and substance, the same as McDonald's contract of December 1, 1899, and provided for the payment of the same compensation. In pursuance to the orders of the board of education, Latenser immediately drew plans and specifications for a new high school building, facing east on the high school grounds, which were adopted. The contract was let for the construction of the building, which was commenced in July of that year, and .cost, when completed, $189,743.16. After the erection of the building McDonald commenced this suit against the school district to recover the damages

alleged to have been sustained by him by reason of the violation of his contract of December 1, 1899, on the part of the school district, by and through the acts and resolutions of its board of education. The petition fully set forth the foregoing facts, pleaded the contract, alleged its violation on the part of the defendant, and prayed judgment for the sum of $10,000, with interest from December 1, 1900. The school district, by its answer, admitted the adoption of the resolution set forth and attached to the petition; admitted the execution of the contract sued on, but denied the construction placed on it by the allegations of the petition; and set forth the construction and meaning thereof contended for by defendant. The adoption of the resolution annulling and rescinding the contract was also admitted, and it was alleged that the defendant was justified in the termination of the contract for the reasons that the plaintiff was so unskilled in architecture, and in the drawing of plans and specifications for school buildings, as to render him wholly incompetent to perform the work and duties of an architect. The answer further alleged that in the performance of the duties of an architect, and in the performance of the duties of a superintendent of the construction of public buildings, such as school buildings, in addition to skill and good workmanship, a high degree of honesty, good faith, integrity and truthfulness is required; nevertheless plaintiff is wholly lacking in honesty, good faith, integrity and truthfulness, which facts became known to defendant shortly after December 1, 1899.

The reply fully traversed the matters of defense contained in the answer; denied specifically the allegations of the last paragraph thereof, and alleged, in substance, that the contract was rescinded after certain new members of the board had been elected, for the purpose of showing favoritism to John Latenser, and for the sole purpose of giving him the contract for drawing the plans and specifications for the erection of the high school building; because of his personal and political services rendered to

many members of the board of education. Defendant filed a motion to strike certain paragraphs of the reply, which was properly sustained in part, and overruled as to the other matters contained therein. And thereupon, on the issues thus formed, the cause was tried to a jury. After the introduction of the plaintiff's evidence, counsel for the school district moved the court for an instruction directing the jury to return a verdict for the defendant. The motion was overruled, and the district thereupon introduced its evidence. Plaintiff produced his rebuttal, and at the close of all of the evidence moved the court to direct the jury to return a verdict for him for the amount sued for. The defendant objected to the motion. The objection was overruled, the motion was sustained, and the jury was instructed to return a verdict for plaintiff for five per cent. of $187,743.16, less $40, the amount which the evidence showed it would have cost the plaintiff to carry out and perform his contract, with interest on the same from December 1, 1900, to wit, $10,225; and the jury returned a verdict for the plaintiff for that amount. Judgment was entered on this verdict. The school district prosecuted error to this court, and hereafter will be called the plaintiff. We have made the statement of facts somewhat prolix, but it seemed necessary for a correct understanding of the questions presented for our decision.

1. Plaintiff contends that the court erred in directing the jury to return a verdict for the defendant herein. It must be observed that there is no conflict in the evidence as to any material question of fact put in issue by the pleadings. The plaintiff specifically admits the adoption of all the resolutions pleaded and offered in evidence; that it entered into the contract in question with the defendant, McDonald, as alleged in the petition; that it was valid; and that by the resolutions above mentioned the board of education annulled, canceled and set it aside, without McDonald's consent. This entitled him to maintain an action for damages, and unless a valid defense was pleaded, and established by some competent evidence, he

would be entitled to recover. The first question for determination is the meaning of the terms of the contract—in other words, its construction. This was for the court, and it would have been reversible error to have submitted that question to the jury. *Simms v. Summers,* 39 Neb. 781; *Rosenthal v. Ogden,* 50 Neb. 218, 223; *Western Mfg. Co. v. Rogers,* 54 Neb. 456, 460; *Meyer v. Shamp,* 51 Neb. 424; *Ricketts v. Rogers,* 53 Neb. 477.

The trial court held that for the performance of the duties which McDonald assumed, and which are all explicitly set forth in the contract, he was entitled to receive as compensation a sum equal to five per cent. of the cost of all the work done in remodeling buildings already constructed, and five per cent. of the total cost of all new buildings ordered constructed by the board of education, during the term of his contract.

We are unable to say that the court was wrong in his view of the meaning of the agreement. McDonald had given up his contract of May 8, 1899, and had accepted in lieu thereof his election as architect for the district for the term of one year; had agreed to give his entire time to the business of the plaintiff, if required to do so; to furnish whatever it desired in the way of plans, specifications, drawings, blue prints and everything necessary to construct its high school building, and as well as plans and specifications and all matters necessary for remodeling any school buildings already constructed. These plans were to belong to the plaintiff absolutely, with power to change or alter them without McDonald's consent, during the term of his contract or afterwards; he was to have no charge or superintendency of construction, so that when the plans, specifications, maps, blue prints, drawings and estimates were furnished in such numbers as were required for the district, the board of education, contractors, builders and superintendents of construction, erection of the building could go forward to completion without further service on his part, and his contract would be fully performed. Plaintiff does not seriously question this view of

the agreement, but contends that the compensation mentioned therein should be held to apply only to the amount of money actually expended in improvements during its term. This view of the matter is so unreasonable that we can not give our consent to it. It could not have been the understanding of either the board of education or Mc-Donald. It was conceded, as a matter of course, that the contract which Latenser, as architect, had for the erection of the school buildings on Cass, Pacific and Davenport streets, could not be interfered with; and that McDonald had the contract for the high school building, which would compensate him to the amount of about $10,000; and, deeming it better to secure his services for all purposes, including the high school building, as well as the contemplated improvements in the way of remodeling and altering its other school buildings, the board resolved to enter into a general contract with him for one year from December 1, 1899, during which time it was contemplated that the high school building would be ordered, would in fact be constructed, and all other needed improvements made. McDonald, with this understanding, could well afford to give up his former employment, and accept this general contract for a year, with the compensation agreed upon therein. Any other view of the matter would be so unfair and unjust that it should not receive our serious consideration. We therefore approve of the construction placed on the contract by the trial court. It being thus settled that the defendant herein was entitled to recover, the court did not err in directing a verdict in his favor.

2. This brings us to the consideration of the matters of defense contained in the record. It appears that the only matter pleaded as a defense, which was entitled to any consideration, or in the support of which any evidence could have been introduced over McDonald's objections, was that of unskillfulness and incompetency. The district offered no proof to sustain these allegations. No one attempted to testify that McDonald was incompetent or unskillful, but on the contrary, the evidence discloses that

he was an architect of many years' experience; that he had received proper preliminary training, and during the sixteen years he had been practicing his profession in Omaha he had planned and constructed many fine and costly buildings, both public and private, to the entire satisfaction of those concerned therewith. As to the question of his honesty and integrity, that matter was not pleaded in such a manner as to state a defense, and was therefore not an issue in the case. If the answer had alleged that by dishonesty and fraud he had procured the contract in question, or that he had been guilty of dishonesty or want. of integrity in the performance of his duties thereunder, evidence on these points should have been received. The court properly ruled that the offer of evidence of that general nature, by the members of the board of education, could not be received under the issues made by the pleadings. Therefore no substantial defense to the action was established.

3. We now come to the measure of damages. The trial court held that McDonald was entitled to recover the amount of the compensation provided for by the terms of the agreement. The contract in this case was an entirety, was one for personal services, and the breach of it was total. In such a case the measure of damages is what the plaintiff would have earned if the contract had been carried out, less what it would have cost him to perform it according to its terms. *Ennis v. Buckeye Publishing Co.*, 44 Minn. 105, 46 N. W. 314.

The case of *Brodie v. Watkins*, 33 Ark. 545, 34 Am. Rep. 49, is in point. It was one where an attorney had contracted with a client to prosecute a suit, and was to have, as compensation therefor, ten per cent. of the amount of money recovered. He filed a bill, commenced the action, and was proceeding to prosecute it in a proper manner, when his employer discharged him. It was held that he was entitled to recover as damages ten per. cent. of the amount afterwards recovered by the client, less the actual expense he would have incurred in prosecuting the suit.

In the case at bar, McDonald was entitled to five per cent. of the total cost of the building constructed by order of the board of education, less the sum of $40, which the testimony showed would have been his actual expense in performing his contract. *Webster v. Wade,* 19 Cal. 291. And as to this amount there is no conflict of evidence.

In the case of *Wirth v. Calhoun,* 64 Neb. 316, it appeared that Wirth had made a contract with the Calhouns whereby the latter were to give certain performances, consisting of music, at Wirth's place of amusement in Omaha. The Calhouns were discharged prior to the termination of the contract, and sued for damages; claiming that they were damaged in the amount of the contract price which they would receive for the remainder of their engagement. We held as follows (p. 318):

"As to the failure to allege that they [the Calhouns] were unable to find other employment, that is a matter of defense, and they were not required to anticipate it." The lower court instructed the jury as follows: "If you find for the plaintiffs you will assess their damages at the sum of $60 per week from July 24, 1898, to October 31, 1898, together with the reasonable value as shown by the evidence of their board and lodging for the same period." The Calhouns were to be paid $60 per week, and Wirth was to furnish them with board and lodging. Referring to this instruction, Commission ALBERT said: "The instruction was proper, under the pleadings and evidence in this case. It is not claimed that there was any evidence tending to show that the plaintiffs had, or, by the exercise of due diligence might have secured, other engagements, or of any other fact in mitigation of damages. Under such circumstances, the contract price is the measure of damages."

In the case at bar there is nothing in the pleadings or evidence tending to show that McDonald had, or by the exercise of due diligence might have secured, other employment. The record shows conclusively that he had the time to fully perform his contract with the school board

within the year mentioned therein, and that during that period he could have drawn the plans and specifications for the new high school building, and would have drawn them had he been permitted to do so, in accordance with the terms of his contract. The only proof introduced to reduce the measure of his compensation was his own evidence that it would have cost him $40 in the way of expense to have performed his contract. Adopting the above rule, there was nothing for the court or jury to do but to make the computation and announce the amount, and it was unnecessary to require the jury to perform that duty.

4. Counsel for the plaintiff contends that the court erred in refusing him the right to cross-examine McDonald on the May contract. The questions put to him by way of cross-examination only tended to show how long it took him to draw the plans and specifications for the building contemplated by that contract. Surely this had nothing to do with the matter in controversy. The May contract had been abandoned by both parties, and this action in no manner depended on it.

Latenser's plans for the high school building, which were adopted by the board, were introduced in evidence, and McDonald testified as to the length of time it would have taken him to draw them, in order to show that he could have fully performed his duties in that behalf during the life of his contract and the term of his employment. His evidence on this point was not disputed by any one. This evidence was competent and proper to show that, in addition to the fact that he was willing to perform the contract on his part, he was able to do so.

5. It is alleged that the court erred in refusing to receive McDonald's original petition in evidence. We do not so view the matter. The allegations of the original petition were, in substance, the same as those contained in the one on which the case was tried; the only difference being in the statement of the items on which he claimed damages, and its exclusion was in no way prejudicial to the interests of the plaintiff in er ir.

An examination of the record convinces us that the case was fairly tried; that the construction placed on the contract, and the rulings of the court as to the measure of damages, were correct; and for the above reasons we recommend that the judgment of the district court be affirmed.

OLDHAM and POUND, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is

AFFIRMED.

On motion for rehearing, the following opinion was filed December 2, 1903. *Rehearing denied:*

Rehearing. If a correct conclusion has been reached, even by a wrong course of reasoning, the unsuccessful party is not entitled to a rehearing.

SULLIVAN, C. J.

It is said in the opinion that the May contract was superseded by the November contract. This conclusion is challenged as obviously unsound, and it is, perhaps, indefensible. It is, at least, contrary to the understanding of the parties as disclosed by this record. But conceding it to be unwarranted, conceding that neither contract impinges upon the other, there is still good reason for holding that the case has been rightly determined, and that the judgment of affirmance should stand. McDonald has, beyond question, a cause of action upon one contract or the other. Whether he has a right of action upon the May contract, depends upon whether he was bound by that contract to do what John Latenser did in furnishing plans, specifications, etc., for the high school building. Evidently he was not so bound. He had already furnished plans, specifications, details, copies and blue prints in accordance with the requirements of the May contract, and he was not bound by that contract to furnish others. He

might, of course, have been required to make alterations,
but that was the farthest limit of his obligation. He was
bound to do the work done by Latenser, but he was bound
by the contract made in November, and not the one made
in May.

REHEARING DENIED.