[S. F. No. 4767. In Bank.—December 16, 1909.]

## JOHN SEYMOUR, Respondent, v. THERESA A. OELRICHS et al., Appellants.

STATUTE OF FRAUDS—CONTRACT OF HIRING FOR MORE THAN ONE YEAR.— A contract of employment which by its terms was to continue for a period of ten years is within the statute of frauds (Code Civ. Proc., sec. 1973, subd. 1), and required to be in writing.

ID.—MEMORANDUM OF CONTRACT—ESSENTIAL TERMS MUST BE EXPRESSED.—To satisfy the statute of frauds the written memorandum of the contract must contain its essential terms, expressed with such a degree of certainty that it may be understood without recourse to parol evidence to show the intention of the parties.

ID.—FAILURE TO STATE PERIOD OF EMPLOYMENT AND SALARY.—A contract for the employment of the plaintiff for the period of ten years from a certain date, at a monthly salary of three hundred dollars a month, to act as overseer of the lands and buildings of the defendants, is not sufficiently evidenced by a writing to meet the requirements of the statute, if such writing fails to state either the period of the employment or the amount of the salary.

ID.—AGENT'S AUTHORIZATION MUST BE IN WRITING.—The authority of an agent to enter into a contract for his principal, which is required by law to be in writing, can only be given by an instrument in writing.

ID.—CONTRACT BY AGENT—WANT OF AUTHORITY—BILL OF EXCEPTIONS— SPECIFICATION OF INADEQUACY OF EVIDENCE.—A specification contained in a bill of exceptions that there was no evidence to sustain a finding that the contract of employment alleged was entered into between the defendants and the plaintiff is sufficient to raise the question of the adequacy of the evidence of the authority of a person purporting to have made the contract for the defendants to act as their agent in the matter.

ID.—SUFFICIENCY OF SPECIFICATIONS.—Specifications of the insufficiency of the evidence to sustain the findings are sufficient when they are as specific as the findings themselves, and where there was no finding that the contract in question was made through an agent, there was no necessity for a specification directed to the fact of such agency.

ID.—ESTOPPEL TO DENY CONTRACT—DECLARATIONS OF UNAUTHORIZED AGENT.—Where a person purporting to act as an agent in the making of a contract of employment had no authority from the persons for whom he assumed to act, the latter are not estopped to deny the validity of the contract by reason of declarations made by the alleged agent at the time of the contract, unless they took some action with notice of the fact that such declarations had been made.

ID.—AUTHORITY OF AGENT TO CONTRACT IN WRITING.—The mere fact that an agent had authority to bind his principal by some sort of a contract does not, in the absence of proof of written authority, justify the inference that he had authority to bind him by a contract required to be in writing.

ID.—NOTICE OF AGENT HAVING EXCEEDED AUTHORITY.—Even though a principal has knowledge that his agent has made a contract of employment on his behalf, his duty to inquire into the terms of the contract did not impute to him notice that the agent had exceeded his authority and had undertaken to bind him by an agreement required to be in writing.

ID.—PART PERFORMANCE OF INVALID CONTRACT FOR SERVICES.—The mere part performance of a contract for personal services, which by its terms is not to be performed within a year, and which is invalid because not evidenced by a writing, does not render the contract valid and enforceable.

ID.—ESTOPPEL TO ASSERT STATUTE OF FRAUDS.—A court of equity will hold a person estopped to assert the statute of frauds, where such assertion would amount to practicing a fraud. The operation of this equitable doctrine is not limited to any particular class of contracts included within the statute of frauds, provided always the essential elements of an estoppel are present.

ID.—FRAUD NECESSARY TO ESTOPPEL.—To constitute an estoppel by acts or conduct, the presence of fraud on the part of the person estopped is necessary. To constitute such fraud an actual intent to mislead is not essential.

ID.—WHAT CONSTITUTES FRAUD—REPRESENTATIONS OF FUTURE INTENTION.—The acts, conduct, or statements relied on as constituting ground for the estoppel must generally be acts, conduct, or statements amounting to a representation of fact, as distinguished from mere expression of opinion or intention, or mere promise of something to be done in the future. The refusal to make a written contract, as agreed, is not ordinarily such a fraud as will take a case out of the operation of the statute of frauds under the doctrine of equitable estoppel.

ID.—FRAUDULENT REPRESENTATION OF FUTURE INTENTION—EQUITABLE CONTRACT.—Notwithstanding the foregoing rule, a representation of a future intention absolute in form, deliberately made for the purpose of influencing the conduct of the other party, and acted upon by him, is generally the source of a right, and may amount to a contract enforceable as such by a court of equity.

ID.—CIRCUMSTANCES NOT CREATING EQUITABLE CONTRACT.—The doctrine that the mere omission or refusal to make a writing, as promised, is not such a fraud as will take a case out of the operation of the statute of frauds, is generally confined to cases where the promise was not made under such circumstances as would warrant the conclusion that it constituted, in the eye of equity, a contract, the repudiation of which would be a manifest fraud on the other party.

ID.—PROMISE TO GIVE WRITTEN CONTRACT IN FUTURE—RESIGNATION OF OFFICIAL POSITION BY PROMISEE—REPUDIATION OF PROMISE A FRAUD.—Where the defendants verbally promised the plaintiff, who was at the time occupying practically a life position in a police department, that if he would surrender his position and enter their employ they would engage him for a period of ten years at a stated salary, and would give him a written contract embodying the terms of his employment at a stated future time, and the plaintiff, in full reliance on such promise, irrevocably surrendered his position and entered the defendants' employ, such promise, in the eye of equity, constituted a binding contract, the subsequent repudiation of which by the defendants would constitute such a manifest fraud as would estop the defendants from asserting the invalidity of the oral contract.

ID.—BREACH OF CONTRACT OF HIRING—MEASURE OF DAMAGES—CONTRACT PRICE FOR ENTIRE TERM.—In an action for the violation of the terms of a contract of hiring, instituted before the expiration of the period for which the employment was to have continued, the measure of damages is, *prima facie*, the contract price for the entire period, less such earnings from other employments in which the plaintiff might have been engaged after his discharge, and also what he may earn, by the exercise of reasonable exertion and diligence, during the balance of the unexpired term.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial. J. C. B. Hebbard, Judge.

The facts are stated in the opinion of the court.

Tobin & Tobin, for Appellants.

Peter F. Dunne, and C. W. Durbrow, for Respondent.

ANGELLOTTI, J.—An opinion was filed on this appeal on July 6, 1909, and judgment given thereon as follows: "The judgment and order appealed from are reversed." The ·following is a copy of said opinion, the same having been written by Justice Sloss:

"In this action the plaintiff seeks to recover the sum of $28,500 as damages for the breach of a contract of employment. He alleges that on or about the 1st day of May, 1902, the defendants Theresa A. Oelrichs and Virginia Vanderbilt, with their brother Charles L. Fair, since deceased, were the heirs at law of James G. Fair, deceased, and the owners of his estate, consisting in large part of real property in the city and county of San Francisco. It is alleged that on or about said date the said heirs of James G. Fair entered into a contract with the plaintiff whereby it was agreed that said heirs should employ the plaintiff for the period of ten years from ·June 1, 1902, at a salary of $300 a month, to act as overseer ·of their lands and the buildings thereon. On August 14, 1902, Charles L. Fair died and all of his interest in the property above mentioned devolved upon his sisters Theresa A. ·Oelrichs and Virginia Vanderbilt. Plaintiff, as is averred, entered upon the performance of his duties under the aforesaid contract and continued in such employment until about the 29th day of June, 1904, when, without his consent the defendants Theresa A. Oelrichs and Virginia Vanderbilt refused to perform said contract any longer. Plaintiff has ever ·since been ready and willing to perform said contract upon his part.

"The answer denies the making of the contract as alleged .and avers that plaintiff was employed by the Fair heirs from month to month only. The court found that all of the allega-tions of the complaint were true except the allegation· of damage, with respect to which it found that plaintiff had been ·damaged in the sum of $11,100. It was further found that the contract of employment alleged by plaintiff was, in the first instance, entered into by word of mouth, but was afterwards reduced to writing subscribed by the parties to be charged . thereby. The writings regarded by the court as constituting .a written memorandum or contract will be more particularly referred to hereafter. It is further found that on the 1st ·of May, when the original oral agreement was made, the plain-

tiff was holding the position of captain of detectives in the police department of the city and county of San Francisco at a salary of $250 a month; that the heirs of James G. Fair did at that time request him to give up his position as captain of detectives and assured him that if he would do so they would give him a position for ten years upon a salary of $36,000 payable in equal monthly payments of $300 and would within a short time put such employment and the terms thereof in writing and sign the same. It was upon such representations and assurance, the court finds, that plaintiff resigned his said position as captain of detectives and took service with said heirs as alleged. There is a further finding to the effect that it is not in the power of said heirs to restore to said plaintiff his *status* and position as captain of detectives. The defendants Theresa A. Oelrichs and Virginia Vanderbilt have continuously failed and refused to give to plaintiff any written contract as promised. Upon these findings the court entered judgment in favor of plaintiff and against Theresa A. Oelrichs and Virginia Vanderbilt for the sum of $11,100 with interest and costs, and said defendants appeal from the judgment and from an order denying their motion for a new trial.

"It is perfectly clear that the contract alleged was one that by its terms was not to be performed within one year and was therefore, under the provisions of the statute of frauds, required to be in writing. (Code Civ. Proc., sec. 1973, subd. 1.) It is equally clear that the writings mentioned in the findings were not sufficient to comply with the requirements of the statute. The first of these is a general notice reading as follows:

'Office of Fair Heirs, 230 Montgomery St.,
'SAN FRANCISCO, June 18, 1902.
'To Whom It May Concern:
'Mr. John F. Seymour is in our employ as superintendent of buildings, and is entitled as our representative to admission to all our properties. We ask the kind consideration of any of our tenants and others whom he may come in contact with.                    Very respectfully,
'Fair Heirs.
'By CHARLES S. NEAL.'

"The second is a letter written to Seymour by Charles L. Fair under date of July 22, 1902, and containing the following expression: 'I suppose by this time you have full knowledge of the property of the estate and hope that everything is pleasant at the office.' The third is a telegram sent by the defendant Virginia Vanderbilt to Charles S. Neal, under date of March 4, 1904. In it are the words: 'My sister and S (self) agree to keep Seymour in office at former salary.'

"Even if it were assumed that the evidence is sufficient to show that either Charles S. Neal or Charles L. Fair was authorized to bind the appellants, and that the defendant Mrs. Vanderbilt was authorized to bind her sister, Mrs. Oelrichs, we find nothing in any of the writings which shows any such contract as the one set up by plaintiff. Giving them their utmost effect, the papers disclose no more than that Seymour was employed by the Fair heirs as superintendent of buildings at a salary. There is no reference to an employment for any given period. As plaintiff had received payment for the time during which he had rendered service, the very essence of his case was a contract of employment for ten years. To satisfy the statute of frauds a memorandum 'must contain the essential terms of the contract expressed with such a degree of certainty that it may be understood without recourse to parol evidence to show the intentions of the parties.' (5 Browne on Statute of Frauds, sec. 371.) In *Breckenridge* v. *Crocker,* 78 Cal. 529, [21 Pac. 179], the court said: 'The memorandum must contain all the material elements of the contract.' Again in *Craig* v. *Zelian,* 137 Cal. 105, [69 Pac. 853], it is said: 'The statute of frauds was originally enacted "for the prevention of frauds and perjuries" and an agreement . . . is required to be in writing in order that this purpose may be accomplished. The whole object of the statute would be frustrated if any substantive portion of the agreement could be established by parol evidence.'

"In the absence of evidence to support the finding of a written contract, we are compelled to inquire whether the judgment may be sustained upon the finding that an oral agreement was entered into as alleged. In this particular, too, the sufficiency of the evidence to sustain the finding is questioned by the appellants. The plaintiff offered testimony tending to show that while he was occupying the position of captain of

detectives of the police department of the city and county of San Francisco he had been urged and requested by Charles L. Fair and by Hermann Oelrichs, the husband of one of the defendants, to resign his position and enter the service of the Fair heirs. The suggestion came, originally, from Charles L. Fair. After several discussions of the subject, Fair and Oelrichs, the latter asserting that he represented Mrs. Oelrichs and Mrs. Vanderbilt, agreed to give him a ten year contract at $300 a month. To this Seymour assented, and about two weeks later he went into the office of the Fair heirs, taking the place of superintendent of buildings. His salary of $300 a month was paid until his discharge in June, 1904, with the exception of a short period during which a smaller sum was paid him.

"It is claimed by the appellants that the record contains no evidence showing any authority on the part of either Charles L. Fair or Hermann Oelrichs to bind Mrs. Oelrichs and Mrs. Vanderbilt by any such contract as found by the court. We think this contention is sound and must be sustained. The contract was one which, as we have seen, was required to be in writing, and under section 2309 of the Civil Code 'an authority to enter into a contract required by law to be in writing can only be given by an instrument in writing.' (*Nason* v. *Lingle*, 143 Cal. 363, [77 Pac. 71].) The record does not show that any such written authority was given by either of the appellants to Charles L. Fair or to Hermann Oelrichs. Indeed, as concerns Fair, it is not claimed that he assumed to act on behalf of his sisters. The position taken by respondent in connection with the effect of Oelrichs's acts is that the specifications of insufficiency of evidence contained in the bill of exceptions were not such as to raise the question of Oelrichs's authority to bind the appellants. As has been stated, the allegation of the complaint is simply that the plaintiff entered into the contract alleged with the Fair heirs, and the finding follows the allegation of the complaint. One of the specifications (designated 'second') reads as follows: 'The evidence is insufficient to justify the finding that the alleged contract set forth in paragraph III of plaintiff's complaint was on the 1st of May, 1902, or thereabouts, entered into orally or by word of mouth by and between the plaintiff on one side and C. L. Fair and these defendants, or any or either of them,

on the other, in this that the evidence is insufficient to show
that the plaintiff Seymour ever orally entered into any con-
tract of service for a term of years as alleged in his complaint
with C. L. Fair and his sisters, Theresa A. Oelrichs and Vir-
ginia Vanderbilt, or any or either of them; that the evidence
is insufficient to show that Hermann Oelrichs, as the attorney
in fact of said Theresa A. Oelrichs and Virginia Vanderbilt,
ever orally or in writing entered into any such contract with
plaintiff as is alleged in paragraph III of his complaint; that
none of the oral communications had between plaintiff and C.
L. Fair or Hermann Oelrichs or Theresa A. Oelrichs contain
any evidence of any such contract as set forth in paragraph
III of plaintiff's complaint.'   A further specification
('twelfth') states that 'the evidence is insufficient to show
that either of these defendants ever entered into any agree-
ment by word of mouth, on or about the 18th day of June,
1902, with plaintiff.'   We see no reason for holding that these
specifications were not sufficiently definite to enable the ap-
pellants to raise the point that there was no evidence to show
the authority of Hermann Oelrichs to make the contract which
he assumed to make on behalf of Mrs. Oelrichs and Mrs. Van-
derbilt.   The ultimate fact, and the fact as alleged and found,
is that the plaintiff entered into the contract in question with
Mrs. Oelrichs and Mrs. Vanderbilt.   Such contract could have
been made in one of two ways only; by the defendants them-
selves or by their agent duly authorized.   The specification
that there was no evidence that the contract alleged was
entered into between the defendants and the plaintiff is all
that is required.   To meet such specification the plaintiff must
be able to point in the record to evidence showing either that
the appellants made the contract themselves or that they au-
thorized its making by an agent who made it.   The conten-
tion of respondent is based upon a narrow construction of
that part of the specification first quoted, which states that
the evidence is insufficient to show that Mr. Oelrichs as the
attorney in fact of Mrs. Oelrichs and Virginia Vanderbilt
ever entered into any such contract with plaintiff as is alleged
in paragraph III of plaintiff's complaint.   This, it is claimed,
points merely to the question of whether or not Oelrichs ac-
tually made the agreement and assumes his authority to do so.
As this court has shown by its later decisions, it is no longer

disposed to scrutinize specifications of insufficiency with the minuteness which was applied in earlier cases, such as *De Molera* v. *Martin*, 120 Cal. 544, [52 Pac. 825]. The more liberal view now entertained is illustrated by the rulings in *American Type Founders Co.* v. *Packer*, 130 Cal. 459, [62 Pac. 744]; *Stuart* v. *Lord*, 138 Cal. 672, [72 Pac. 142]; *Drathman* v. *Cohen*, 139 Cal. 310, [73 Pac. 181]; *Holmes* v. *Hoppe*, 140 Cal. 212, [73 Pac. 1002]; *Bell* v. *Staacke*, 141 Cal. 194, [74 Pac. 774]; *Harris* v. *Duarte*, 141 Cal. 498, [70 Pac. 298, 75 Pac. 58].) In the case last cited the chief justice declares the rule to be that the specifications are sufficient when they are as specific as the findings themselves. In this case there is no finding that the contract was made through Oelrichs as agent or that Oelrichs had authority to act as agent, and there was therefore no necessity for a specification directed to the fact of such agency.

"It is contended by the respondent that, regardless of the foregoing consideration, he is entitled to recover upon the theory of an estoppel. The alleged estoppel is based upon the findings of the court to the effect that Seymour, upon the faith of representations that he would have a ten-year contract, resigned and lost irrevocably his position in the police department. This cannot, in the present state of the record, be invoked as a ground for affirming the order. If Oelrichs had no authority to bind his wife and her sister by a ten-years' contract, they could not be estopped by his declaration that they would give Seymour such contract, unless they took some action with notice of the fact that this declaration had been made. (*Lambert* v. *Gerner*, 142 Cal. 399, [76 Pac. 53].) Without going into a recital of the evidence offered for the purpose of connecting these appellants with the transaction, we may say that there is nothing to show that either of them had knowledge, when Seymour commenced his service, that his employment was other than from month to month. Each of them, when informed of his claim that he had been employed under a contract for ten years, promptly repudiated the alleged contract. If it could be said that the evidence justifies an inference that Oelrichs had authority to bind one or both of the appellants by some sort of contract, it does not, in the absence of proof of written authority (Civ.

Code, sec. 2309), justify the inference that he had authority
to bind them by a contract required to be in writing.   Even
though they had knowledge that he had made a contract of
employment with Seymour on their behalf, their duty to
inquire into the terms of such contract did not impute to
them notice that he had exceeded his authority and under-
taken to bind them by an agreement required to be in writing.
The finding of the court that the appellants had requested
the plaintiff to resign his position in the police department,
etc., is, therefore, not supported by the evidence.   This finding
is attacked by specifications which are sufficient under the
views above declared.

"It is necessary, therefore, that the order denying a new
trial be reversed.   Upon a new trial the plaintiff may succeed
in proving by competent evidence the authority of Oelrichs
to bind the appellant by a contract of employment for ten
years.   We do not here pass upon the question whether, if
such proof had been made, the appellants would upon the
facts here disclosed be estopped to assert the invalidity of
the oral contract made by Oelrichs with plaintiff.   The ques-
tion of estoppel is one which often depends upon the peculiar
facts shown, and, as the evidence on another trial may vary
from that here introduced, we deem it better to omit discus-
sion of this question.   Nor do we, for similar reasons, pass
upon the question of the measure of damages."

It will be observed that the court did not in this opinion
pass upon the question whether, assuming that Mr. Oelrichs
had the power to bind the appellants by a written contract for
ten years, the appellants would, upon the facts disclosed by
the record, be estopped to assert the invalidity of the oral
contract made by said Oelrichs and Charles L. Fair with
plaintiff, and also failed to pass upon the question of the
measure of damages.   Upon petition for rehearing it was
concluded by the court that the question of estoppel should
be determined for the purposes of a new trial, and solely for
that reason an order vacating the decision was made.

We adhere to the views expressed in the former opinion
as to the questions determined therein, and as to such ques-
tions adopt the same as the opinion of the court.   For the
reasons stated therein, the judgment and order denying a new

trial must be reversed, but for the purposes of a new trial that must follow, we will determine the question of estoppel.

In our discussion we shall assume, of course, that Mr. Oelrichs was duly authorized in writing to enter into such a contract on behalf of the defendants as is alleged to have been made by him with plaintiff. If he was so authorized, it is apparent that defendants are bound by his acts, conduct, and statements to the same extent that they would have been had they been personally present and personally had done just what he did. So assuming, the facts that plaintiff's evidence tended to show are substantially as follows: Plaintiff was captain of detectives in the police department of the city and county of San Francisco, at a salary of two hundred and fifty dollars per month. Under the law, he held practically a life position as captain of police, being removable therefrom only for good cause after trial. All this was known to the defendants and to Charles L. Fair, to whose property they have succeeded. Under these circumstances they offered him a position, wherein he was to render personal services in connection with their property in San Francisco for a compensation in money. The terms of the contract were finally agreed upon before Mr. Fair left for Europe, Mr. Fair acting for himself and Mr. Oelrichs representing the defendants. Plaintiff told them that he then had a life position, with a right to a pension if he remained long enough in the police department, and that he could not afford to leave the place and go into anything else unless he was certain of steady employment, and they then told him that they would give him a ten-year contract at three hundred dollars per month. This was assented to by plaintiff. The day before Mr. Fair left for Europe, to be absent a few weeks, being very busy in closing up certain business affairs that had to be attended to before he left, he told plaintiff: "Now, in regard to this contract, you leave that stand until I get back, and I will give you the contract." Plaintiff asked him why it could not be done "now," and Fair told him not to be afraid, it would be all right, everything would be all right. It was understood that he was to go to work at once. On leaving Mr. Fair, plaintiff met Mr. Oelrichs and told him about his conversation with Fair, and Oelrichs said: "As far as I am concerned I will

give you my part of it now if you want it. I represent Mrs.
Oelrichs and Mrs. Vanderbilt and there will be no trouble
about it at all, but you might just as well leave it go until
Fair returns," and plaintiff said "All right." This was about
June 1, 1902. Plaintiff relied absolutely upon the under-
standing that he was to have a written contract for ten years
at three hundred dollars a month, and would not otherwise
have resigned his position in the police department or entered
the employ of the defendants and Fair. The morning Fair
went away, he asked plaintiff when he was going to resign,
and plaintiff said "To-day," and Fair said, "All right, you
go ahead, it will be all right, everything will be all right on
my return." He did resign at once and his new employment
commenced June 1, 1902. Fair was killed near Paris, France,
August 14, 1902, without having returned to America. Plain-
tiff continued to perform all services agreed to be rendered
and received three hundred dollars a month therefor to July
1, 1904, when defendants, having determined to sell all their
San Francisco property, discharged all of their employees,
including plaintiff, and have ever since refused to recognize
him as an employee or pay him any portion of the salary
agreed upon. Plaintiff had no intimation that either Mrs.
Oelrichs or Mrs. Vanderbilt did not know all about the terms
upon which he entered their employ until November, 1903,
when an attempt, which was not persisted in, was made to
reduce his salary; Mrs. Oelrichs on November 30, 1903, told
him that Mr. Oelrichs had no right to make such an arrange-
ment. There was nothing to indicate that Mrs. Vanderbilt
personally had any knowledge that plaintiff was an employee
at all until after Fair's death, or that she personally knew
anything about the alleged contract. It is not claimed by
plaintiff that either Mr. Oelrichs or Mr. Fair did not act in
perfect good faith in this matter, it being conceded that each
of them fully intended to execute the written contract.

The claim of plaintiff is not that mere part performance
of a contract for personal services which by its terms is not
to be performed within a year, "invalid" under our statute
because not evidenced by writing, renders the same valid and
enforceable. Such a claim would, of course, find no support
in the authorities. (5 Browne on Statute of Frauds, sec. 448.)

He necessarily is compelled to rely solely on the claim that the defendants by their conduct and promises, on which he was entitled to and did rely, having induced him to give up his life position in the police department in order to enter their employ for a term of years at three hundred dollars a month, on the assurance from them that they would give him a written contract for such time and amount, and it being impossible for him to be placed in *statu quo*, are estopped from now setting up the statute of frauds as a defense to his action on the contract. Under this claim, the fact of part performance by plaintiff plays no part whatever. It was the change of position caused by his resignation from the police department upon which his claim wholly rests, and this resignation was, of course, no part of the performance of the contract of service, but was something that must be done by plaintiff before he could begin to perform, as was known to the defendants. Plaintiff's case, in this regard, would be just as strong if after his resignation he had been prevented by defendants from beginning to perform.

The right of courts of equity to hold a person estopped to assert the statute of frauds, where such assertion would amount to practicing a fraud, cannot be disputed. It is based upon the principle "thoroughly established in equity, and applying in every transaction where the statute is invoked, that the statute of frauds, having been enacted for the purpose of preventing fraud, shall not be made the instrument of shielding, protecting, or aiding the party who relies upon it in the perpetration of a fraud or in the consummation of a fraudulent scheme." (2 Pomeroy's Equity Jurisprudence, sec. 921.) It was said in *Glass* v. *Hulbert,* 102 Mass. 24, 35, [3 Am. Rep. 418] : "The fraud most commonly treated as taking an agreement out of the statute of frauds is that which consists in setting up the statute against its enforcement, after the other party has been induced to make expenditures, or a change of situation in regard to the subject-matter of the agreement, or upon the supposition that it was to be carried into execution, and the assumption of rights thereby to be acquired; so that the refusal to complete the execution of the agreement is not merely a denial of rights which it was intended to confer, but the infliction of an unjust and uncon-

scientious injury and loss. In such case, the party is held, by force of his acts or silent acquiescence, which have misled the other to his harm, to be estopped from setting up the statute of frauds." This statement has been accepted as setting forth a plain and satisfactory ground for equitable jurisdiction, together with a clear indication of the proper limitation of its exercise. (See 5 Browne on Statute of Frauds, sec. 457a.) In the section last cited, Mr. Browne says: "A plaintiff . . . must be able to show clearly . . . not only the terms of the contract, but also such acts and conduct of the defendant as the court would hold to amount to a representation that he proposed to stand by his agreement and not avail himself of the statute to escape its performance; and also that the plaintiff, in reliance on this representation, has proceeded, either in performance or pursuance of his contract, to so far alter his position as to incur an unjust and unconscientious injury and loss, in case the defendant is permitted after all to rely upon the statutory defense. After proof of this, the court may well be justified in using its undoubted power, in cases of equitable estoppel, to refuse to listen to a defendant seeking to deny the truth of his own representations previously made."

We can see no good reason for limiting the operation of this equitable doctrine to any particular class of contracts included within the statute of frauds, provided always the essential elements of an estoppel are present, or for saying otherwise than as is intimated by Mr. Pomeroy in the words already quoted, viz., that it applies "in every transaction where the statute is invoked." It is a general equitable principle, a part of the broader equitable doctrine stated in *Dickerson* v. *Colgrove,* 100 U. S. 580, and quoted therefrom in *Carpy* v. *Dowdell,* 115 Cal. 687, [47 Pac. 695], as follows: "The vital principle is that he who by his language or conduct leads another to do what he would not otherwise have done shall not subject such person to loss or injury by disappointing the expectations upon which he acted. Such a change of position is sternly forbidden. It involves fraud and falsehood, and the law abhors both."

The question then is whether the facts of this case bring it within the principle we have discussed. It is clear that there was such a change of position on the part of plaintiff in his irrevocable surrender of his office in the police department,

induced in fact by his reliance on the promise of defendants and Fair that a written contract for ten years at three hundred dollars a month would be given, that he would incur great injury and loss in case the defendants are permitted to rely upon the statute of frauds as a defense. That there would necessarily be such a change of position on his part in the event that he relied upon their promise and accepted their offer was known to them, and the promise was given with this knowledge and with the intent that it should be relied on by him and the change in his position thereby induced. The injury done plaintiff by a repudiation of the promise by defendants under these circumstances would certainly appear to be "unjust and unconscientious." Is it permissible to them, in view of the well-settled principle stated, to so repudiate it by interposing the fact that the contract has not been reduced to writing, as promised, as a defense to this action?

Learned counsel for defendants say that no fraud on the part of defendants is shown, and that there can be no estoppel in the absence of fraud on the part of the person estopped. The presence of fraud is, of course, essential. It is established by a multitude of cases that to constitute fraud sufficient to serve as a foundation for estoppel by acts or conduct an actual intent to mislead is not essential. Mr. Pomeroy in his work on specific performance says that the fraud essential in such cases is not necessarily an antecedent fraud, consciously intended by a party in making the contract, but a fraud inhering in the consequence of thus setting up the statute. (Sec. 104.) In *Anderson* v. *Hubble*, 93 Ind. 570, 576, [47 Am. Rep. 394], it was aptly said: "It is not necessary, in order to the existence of an equitable estoppel, that there should exist a design to deceive or defraud. The person against whom the estoppel is asserted must, by his silence or his representation, have created a belief of the existence of a state of facts which it would be unconscionable to deny; but it is not essential that he should have been guilty of positive fraud in his previous conduct. . . . All that is meant in the expression that an estoppel must possess an element of fraud is, that the case must be one in which the circumstances and conduct would render it a fraud for the party to deny what he had previously induced or suffered another to believe and take action upon. . . . There need be no precedent corrupt motive or evil

design." (See, also, 2 Pomeroy's Equity Jurisprudence, sec. 805.) It is unnecessary to cite other authorities upon this well-settled doctrine in regard to equitable estoppel. We do not understand it to be disputed by counsel for defendant. Their claim, as we understand it, is that there is nothing more in this case than a mere promise on the part of defendants to give the written contract, made honestly and in good faith, and that a refusal to comply with such a promise so made cannot serve as a basis for the application of the doctrine of equitable estoppel, the contention being that the mere failure to keep an oral promise to reduce an oral contract to writing cannot suffice to constitute the fraud essential to the application of such doctrine, and that there must be some other fraud shown, such as actual fraud to prevent the contract being reduced to writing. This claim presents the most doubtful question in this case. The authorities all recognize the proposition that the acts, conduct, or statements relied on as constituting ground for the estoppel must generally be acts, conduct, or statements amounting to a representation of *fact,* as distinguished from mere expression of opinion or intention, or mere promise of something to be done in the future. It has therefore been said many times that the mere refusal to make a writing, as agreed, is not such fraud as will take a case out of the operation of the statute of frauds under the doctrine of equitable estoppel. This, undoubtedly, is ordinarily true, even where a party, relying simply on the honor, word, or promise of the other, has changed his position to his injury because thereof. But is it applicable to such a state of facts as we have before us? Practically, defendants said to plaintiff: "We want you to enter our employ at once. We know that to do so you must give up your life position in the police department and that you are not willing to do this unless you are assured of employment for ten years at three hundred dollars a month. A written contract is, under our statute, essential to guarantee you such employment. We will execute this contract just as soon as Mr. Fair returns from Europe. Go ahead and resign your position now and commence work with us at once, and it will be all right. The written contract will be given as promised." Here certainly, in the language of a note to section 877 of 2 Pomeroy's Equity Jurisprudence, was a representation of a future intention

absolute in form, deliberately made for the purpose of influencing the conduct of the other party, and it is stated in such note that, notwithstanding the rule set forth in the text that a statement of intention merely cannot be a misrepresentation amounting to fraud, such a representation of intention as last set forth, if acted upon by the other party, is generally the source of a right, and may amount to a contract enforceable as such by a court of equity. Mr. Bigelow, in discussing the essentials of estoppel by conduct, and particularly the necessity of a representation or concealment of a fact, says that where the statement or conduct is not resolvable into a statement of fact, *and does not amount to a contract*, the party making it is not bound unless guilty of clear moral fraud or unless he stood in a relation of confidence toward him to whom it was made. (5 Bigelow on Estoppel, p. 572.) The same learned author further says that situations may arise in which a contract should be held an estoppel, as in certain cases where only an inadequate right of action would, if the estoppel were not allowed, exist in favor of the injured party, citing the case of *Faxton* v. *Faxton*, 28 Mich. 159, in which a mortgagee was held estopped from enforcing his mortgage, where he had induced the son of a mortgagor, contemplating removal, to remain on the mortgaged land and care for it and support the family of the mortgagor, to whom the mortgagee was related, on a promise, honestly made, that the mortgage would never be enforced if he did so. (p. 577.) In *Harris* v. *Brooks*, 21 Pick. 195, [32 Am. Dec. 254], it was held that a parol declaration by the holder of a note to a surety that he would look to the principal only was a good defense for the surety, on the ground that it lulled the party into security and prevented him from obtaining his indemnity, and that it would be a fraud on the part of the holder to subsequently call upon the surety contrary to such assurance. In *White* v. *Walker*, 31 Ill. 422, a somewhat similar case, it was said that while a promise to forgive a debt or forbear its collection, unsupported by any consideration, was ineffectual as a defense viewed merely as an agreement, yet if the surety has been induced by such assurance to neglect any of the means which might have been used for his indemnity, the "promise may have that effect as an estoppel, which it wants as a contract, and amount to a defense in any subsequent action brought by the creditor." These

authorities are cited simply to show that the mere fact that there was no misrepresentation of *fact*, but only a promise of future action, is not always a bar to equitable relief.    The cases to be found in support of the doctrine that the mere omission or refusal to make a writing, as promised, is not such fraud as will take a case out of the operation of the statute of frauds, are generally cases where the promise was not made under such circumstances as would warrant the conclusion that it constituted, in the eye of equity, a contract, the repudiation of which would be a manifest fraud on the other party. For instance, in stating the rule, the supreme court of Indiana said in *Caylor* v. *Roe*, 99 Ind. 1, that never has it been held that the simple failure or refusal to reduce a verbal contract to writing, *unaccompanied by elements of estoppel or other circumstances invoking the equitable powers of the court,* is such a fraud as will authorize the courts in excepting the contract from the operation of the statute of frauds.    The case of *Equitable Gas etc. Co.* v. *Baltimore etc. Co.*, 63 Md. 285, cited by defendants, was a case of an oral contract for the sale of personal property which, according to its terms, was not to be performed within one year.    It was intended by the parties that it should be put into writing.    The action was by the vendee to obtain an injunction preventing the disposition of the property to others and for specific performance.    There were allegations showing the irreparable injury that would be suffered by the plaintiff in view of its action had in reliance on the contract.    The court recognized it to be a settled rule "that the equity of part performance to entitle a plaintiff to specific execution of a contract within the statute does not relate to contracts for personal service not to be performed within a year."    But they further said that here the parties intended a written contract, and that if such contract was fraudulently withheld, if executed, or if not signed, if the execution be fraudulently and without justifiable cause delayed, a court of equity may require its production or enforce proper execution.    It is obvious that "the application of the rules as to equitable enforcement must to a considerable extent be governed by the circumstances of each case." (5 Browne on Statute of Frauds, p. 586.)

   While the question is by no means free from doubt, we believe that it should be held that there were sufficient facts

in this case to support a conclusion that the promise here to give such a written agreement as was required by the statute was made under such circumstances that the irrevocable surrender by plaintiff of his position in the police department in full reliance thereon, made it, in the eye of equity, a binding contract, the subsequent repudiation of which by defendants would constitute such a manifest fraud as would justify the application of the doctrine of equitable estoppel.

For the purposes of a new trial it may further be properly said that we are entirely satisfied with the opinion filed in this case by the district court of appeal of the third district, written by Justice Hart, of that court, so far as the question of measure of damages is concerned. We adopt that portion of their opinion as the opinion of this court. It is as follows:—

"3. Upon the question of damages, it is contended by the defendants that the basis or measure thereof for a breach of contract such as the one under consideration, where the action is tried before the expiration of the term of service stipulated in the contract, is such actual damage as the evidence shows the plaintiff has sustained up to the time of the trial. Such actual damage in such a case would, of course, be the equivalent in amount to the salary for that portion of the stipulated term of employment ending with the beginning of the trial of the action, less what the plaintiff has been paid by the defendants and what he has earned and received, if anything, from other employments after his discharge from the service of the defendants and up to the trial of the action. (*Schroeder* v. *California Yukon Trade Co.,* 95 Fed. 296.)

"It appears that the plaintiff, some eight months after his employment under the contract with defendants was discontinued, secured a position with Wells, Fargo & Co. at a monthly salary of $200. The court based its award of damages on the aggregate salary to which plaintiff would have been entitled for the unexpired portion of the contract period of ten years with defendants, deducting therefrom, however, the amount earned by plaintiff in his employment with Wells, Fargo & Co. up to the time of the trial, together with the amount which he would earn during the remainder of the ten years at the salary of $200 per month, the amount paid him by Wells, Fargo & Co., assuming that he would retain his employ-

ment and salary with Wells, Fargo & Co. during all of the unexpired portion of the stipulated ten years.

"Counsel have been unable to find any California decision in which the question of the measure of damages is directly presented, discussed and adjudicated in a case, like the one here, where the action for the violation of the terms of a contract of hiring has been instituted before the expiration of the period of time or the term for which the service of a party is stipulated to run. The point has been squarely presented and decided, however, in other jurisdictions, but the conclusions reached are not uniform. In some states the rule contended for by the appellants is laid down and sustained upon reasons which appear to have some support, while in others it is held that the proper basis upon which damages should be awarded for the breach of the terms of a contract such as the one here is the entire term for which the party has been employed, making deductions of earnings from other employments in which the plaintiff might have been engaged after his discharge from service by the master and also allowing for what he may earn, by the exercise of reasonable exertion and diligence, during the balance of the unexpired term. We are thoroughly persuaded that the weight of authority and by far the best reasoned cases support the position of the respondent. . . .

"The gist of the complaint is in the breach of the contract and the injury resulting to plaintiff by reason of such breach. The action is not, in other words, one in which the plaintiff seeks to recover wages, but is for damages for the violation of the terms of the agreement by which he was employed for certain compensation to perform services for the defendants for a stipulated term of years. The measure of damages is, therefore, *prima facie,* the contract price. In *Hamilton* v. *Love,* 152 Ind. 645, [71 Am. St. Rep. 384, 53 N. E. 181, 54 N. E. 437], an action involving the breach of a contract of hiring, it is said: 'There can be but a single action, and not successive actions. The action must be for damages for a breach of the contract, and not in *assumpsit* for constructive services, or for wages. All damages sustained by the servant, in consequence of the wrongful act of the master, whether present or prospective, must be included in the recovery. A single judgment for the injury bars all other claims. The

CLVI Cal.—51

suit may be brought at any time after the breach, either before the expiration of the term of the contract, or afterwards, within the statutory limits. But whether brought before or after the expiration of the term of the contract, the measure of the damages is the same.'

" 'The measure of damages,' say the Missouri court of appeals, in *Lally* v. *Cantwell*, 40 Mo. App. 50, speaking of a contract like the one here, 'is the contract price, although the master may recoup the damages by showing that the servant either earned, or by reasonable exertion might have earned money in other employment during the contract period. . . . Nor is the servant in such cases confined to damages which have accrued up to the institution of the suit, or even up to the day of the trial, as the defendant's counsel erroneously supposes, where the damages are of a continuing character.'

"The rule as thus declared is laid down and sustained in the following cases: *Pierce* v. *Tennessee etc. R. Co.*, 173 U. S. 1, [19 Sup. Ct. 335]; *De Camp* v. *Hewitt*, 11 Rob. (La.) 290, [43 Am. Dec. 204]; *Southerland* v. *Wyer*, 67 Me. 64; *Cutter* v. *Gillette*, 163 Mass. 95, [39 N. E. 1010]; *Miller* v. *Boot and Shoe Co.*, 26 Mo. App. 61; *Boland* v. *Glendale Co.*, 127 Mo. 520, [30 S. W. 151]; *Kelly* v. *Wheel Co.*, 62 Ohio St. 598, [57 N. E. 984]; *Wilke* v. *Harrison*, 166 Pa. St. 202, [30 Atl. 1125]; *East Tennessee etc. R. Co.* v. *Staub*, 7 Lea. (Tenn.) 397; *School District* v. *McDonald*, 68 Neb. 610, [94 N. W. 829, 97 N. W. 584]; *Daniels* v. *Boston and M. R. Co.*, 184 Mass. 337, [68 N. E. 337-379]; *Forked Deer Co.* v. *Shipley*, 25 Ky. Law. Rep. 2299, [80 S. W. 476]; *Olmstead* v. *Bach*, 78 Md. 132, [44 Am. St. Rep. 273, 27 Atl. 501].

"In the last-mentioned case it is said: 'A contract of employment for a year for a certain sum per week, payable weekly, is entire and indivisible, and only one action for the breach thereof can be maintained by the discharged employee.'

"But there is no necessity for reviewing the many cases which hold with respondent that the measure of damages in such a case as the present one is, *prima facie*, the contract price. The rule is invariably applied in cases of personal injury, where the jury is permitted, in the assessment of damages, to consider evidence bearing not alone upon the immediate but upon the future effect of the injury upon the complaining party. Nor is the rule disturbed by the argument,

advanced by the appellants, that it is impossible to determine with accuracy what damage plaintiff would actually suffer during the remainder of the unexpired term. It is to be conceded that the question of the extent of the future damage which a complaining party in a case like the one at bar would suffer is fraught with some difficulty. Yet it hardly rests with the defendants to complain of such difficulty, since it arises only through the wrongful act of the defendants themselves. There is no claim here that the plaintiff was incompetent for any reason to properly discharge the duties assigned to him by the defendants. The specific reason for his dismissal from their service does not appear, but it may be safely assumed that if the cause was inefficiency in the performance of the duties of the position, that fact would have been set up. Therefore, if the defendants conceive that to be a hard rule which compels them to respond in damages, based largely upon what they characterize as pure speculative injury, they have themselves and no one else to blame. It is well said in *Cutter* v. *Gillette,* 163 Mass. 95, [39 N. E. 1010] : 'But it is not the law that damages which may be larger or smaller because of such uncertainties are not recoverable. The same kind of difficulty is encountered in the assessment of damages for personal injuries. All the elements which bear upon the matters involved in the prognostication are to be considered by the jury, and from the evidence in each case they are to form an opinion upon which all can agree, and to which, unless it is set aside by the court, the parties must submit. The liability to have the damages which he inflicts by breaking his contract so assessed is one which the defendant must be taken to have understood when he wrongfully discharged the plaintiff, and if he did not wish to be subjected to it he should have kept his agreement.' And upon this same point our supreme court in *Holt Co.* v. *Thornton,* 136 Cal. 235, [68 Pac. 708], uses the following language: 'It has often been held that damages may be recovered for the destruction of merely immature growing crops, although there was no absolute certainty that they would ever mature, for he who breaks the contract cannot wholly escape on account of the difficulty which his own wrong has produced of devising a perfect measure of damages.' (See *Schoemaker* v. *Acker,* 116 Cal. 245, [48 Pac. 62].)"

The judgment and order denying a new trial are reversed.

Shaw, J., Melvin, J., Lorigan, J., and Henshaw, J., concurred.

Rehearing denied.