[No. 2381]

OSCAR NEHLS AND FAY STANLEY, RESPONDENTS, v. WILLIAM STOCK FARMING COMPANY, APPELLANT.

[184 Pac. 212; 185 Pac. 563]

1. FRAUDS, STATUTE OF—PART PERFORMANCE HAS NO APPLICATION TO CONTRACT NOT TO BE PERFORMED WITHIN A YEAR.

A contract not to be performed within one year is void (Rev. Laws, 1075), notwithstanding part performance; the doctrine of part performance having no application to such contract, and the statute being aimed exclusively at the time of performance, and not the subject-matter.

2. FRAUDS, STATUTE OF—PART PERFORMANCE TAKES LAND CONTRACTS OUT OF THE STATUTE.

Part performance takes land contract out of statute of frauds when not to enforce the contract would result in a fraud being perpetrated upon a party who has partially performed.

3. FRAUDS. STATUTE OF — LESSOR OF HORSES AND TEAMS NOT ESTOPPED TO SHOW INVALIDITY OF CONTRACT.

Where lessees hired horses to plow and seed land, after lessor had refused to furnish horses, and without being misled by any act or acts on part of lessor, lessor is not estopped from setting up invalidity of its parol contract to furnish horses under statute of frauds in lessees' action for damages for breach thereof.

ON PETITION FOR REHEARING

1. FRAUDS, STATUTE OF—ESTOPPEL TO SET UP STATUTE TO PREVENT PERPETRATION OF A FRAUD.

In an action for a breach of an oral contract by which lessor was to furnish lessee with horses for seeding and harvesting a crop, whatever sum the plaintiffs spent in securing horses and operating the farm did not induce a change of position of plaintiffs, but was the result of a change of position, so that the doctrine of estoppel would not apply to prevent the defendant lessor from setting up the invalidity of the agreement under the statute of frauds, on the ground that the plea of the statute would work a fraud.

2. APPEAL AND ERROR—RAISING DEFENSES NOT MADE IN TRIAL COURT.

Where, in an action for breach by lessor of his oral contract to furnish horses for making a crop, the matter of estoppel to set up the invalidity of the oral agreement under the statute of frauds because of the changed position of plaintiff was not a matter of evidence or contest at the trial, it cannot be relied on, on appeal.

3. FRAUDS, STATUTE OF—CHANGED POSITION OF PLAINTIFF INSUFFI-
CIENT TO ESTOP DEFENDANT FROM PLEADING STATUTE.
    In lessees' action against lessor for breach of an oral con-
tract to furnish horses to plant and harvest a crop, evidence
of lessees' changed position in accepting lease and oral agree-
ment is insufficient to show the working of a fraud, and
thereby estop lessor from setting up the invalidity of the oral
contract under the statute of frauds, where there was no evi-
dence that the plaintiffs could not obtain the identical employ-
ment they left to accept the lease and oral contract.

APPEAL from Sixth Judicial District Court, Humboldt
County; *Edward A. Ducker,* Judge.

Action by Oscar Nehls and another against the
William Stock Farming Company. Judgment for plain-
tiffs, and defendant appeals. **Reversed. Petition for
rehearing denied.**

*Cheney, Downer, Price & Hawkins,* for Appellant:

Respondents base their right to recover damages upon
an alleged violation of an alleged oral agreement, upon
the part of appellant, to furnish respondents, for the
entire term of five years, sufficient work horses. There-
fore the alleged right to a money judgment is founded
upon an oral "agreement that, by the terms, is not to be
performed within one year from the making thereof,"
which said agreement is, by the statute of frauds,
declared to be void.

A contract partly in writing and partly oral is, in legal
effect, an oral contract. Snow v. Nelson, 113 Fed. 353.

Respondents admitted upon the trial that their cause
of action, the alleged oral agreement to furnish neces-
sary horses for the five-year term, was within the
statute of frauds, but contend that by part performance
the case was taken out of the statute. Part performance
is not available in any case, except where the doctrine
of equity is invoked, as in an action for specific perform-
ance; but this is not an action for specific performance.
Rev. Laws, 1073, 1075; Pomeroy, Contracts (2d ed.) p.
141, Sheldon v. Preya, 57 Vt. 263; Osborne v. Kimball,
21 Pac. 153; Conoly v. Harrell, 62 South. 511; Johnson

v. Upper, 80 Pac. 801; Union S. & T. Co. v. Krumm, 152 Pac. 681; 20 Cyc. 284; 29 Am. & Eng. Ency. Law (2d ed.), p. 831; Thisler v. Mackey, 47 Pac. 175. "It is settled by a long series of authorities that a part execution of a verbal contract within the statute of frauds has no effect at law to take the case out of its provisions." Browne, Stat. Frauds (5th ed.), sec. 451; Long v. Long, 122 Pac. 1077; Fuller v. Read, 38 Cal. 99.

*Salter & Robins,* for Respondents:

No demurrer was interposed to the complaint on the ground of uncertainty or ambiguity. After verdict and judgment the court will look to the complaint only to see whether it attempts to set forth the cause of action, even though the allegations are contained only by way of recital. The defect, if any, is cured by verdict. Treadway v. Wilder, 8 Nev. 91; Winter v. Winter, 8 Nev. 129; Branson v. I. W. W., 30 Nev. 289.

By partial performance, the case is taken out of the statute of frauds. Jones on Ev., par. 432. In addition, the respondents have spent two years in carrying out their contract, and have materially changed their situation, to their financial loss, in their endeavor to carry out their part of the contract, the subject of the action. Seymour v. Oelrichs, 106 Cal. 88. "Contracts within the statute are not void, and, if performed or partly performed, they are, to the extent of such performance, taken out of the statute. When executed, or so far as executed, such contracts are valid, and as binding as if they had been in writing." Murphy v. DeHaan, 89 N. W. 100.

"The general rule under discussion is not violated by allowing parol evidence to be given of the contents of a distinct, valid, contemporaneous agreement between the parties which was not reduced to writing, when the same is not in conflict with the provisions of the written agreement." Jones on Ev., sec. 439; New York L. I. Co. v. Thomas, 104 S. W. 1074; Locke v. Murdock, 151 Pac. 298.

By the Court, COLEMAN, C. J.:

This is an action to recover damages for an alleged breach of contract. The complaint as amended pleads a written lease of certain lands for a period of five years, of date August 23, 1915, and also an oral contract whereby it is alleged the defendant agreed, as an inducement to the making of the lease, to furnish to plaintiffs, for a period of five years (during the term of the lease), without charge, sufficient horses to cultivate the land so leased and to harvest the crops. It is alleged in the complaint that plaintiffs entered into possession of the lands leased on November 14, 1915, and during the year 1916 cultivated and harvested a crop and surrendered one-third thereof to defendant as rental; that plaintiffs requested defendant to furnish them horses to plow and prepare lands for the crop of 1917, but that defendant refused to furnish the necessary horses, to wit, forty head; that because of such refusal plaintiffs rented fourteen head of horses at an outlay of $893; that they were damaged in the sum of $7,339 because of the failure to get the balance of the horses; and it contains certain other matters not necessary to state. An answer was filed denying the execution of the verbal contract; denying all other material allegations of the complaint, except execution of the written lease; pleading the statute of frauds, and setting up two causes of action as counter-claims. The reply admits the indebtedness pleaded in the counter-claims.

Upon the trial of the case, before a jury, plaintiffs offered evidence tending to prove that the defednant company orally stipulated and agreed with the plaintiffs to furnish sufficient horses to plow the ground leased; that in June, 1916, they demanded of defendant horses to prepare the land for the crop of 1917; that forty head of horses were necessary for the seeding and harvesting of the crop of 1917; that defendant refused to furnish the same, or any part thereof; that the plaintiffs hired fourteen head at an expense of $893, and that, because of defendant's refusal to furnish said forty

head of horses, plaintiffs had been damaged in a large sum of money.

The defendant objected to the testimony so offered, for the reason that such agreement relative to the furnishing of horses, not being in writing and not to be performed within one year, was within the statute of frauds (Rev. Laws, 1075), and null and void. The trial judge overruled the objections, to which ruling exceptions were taken. From a judgment in favor of plaintiffs, defendant has taken this appeal.

It is the contention of appellant that the judgment must be reversed, because the oral contract relied upon being for five years was within the statute of frauds, and null and void. It is not contended by respondents that the contract was one which was to be completed within a year, but it is asserted that it is taken out of the operation of the statute of frauds by partial performance.

1-2. Learned counsel have made in this court, as they no doubt did in the trial court, a very ingenious argument in support of their contention, and one which would appeal to and sway a trial judge who, in the bustle and rush incident to a jury trial, has not the time to give mature consideration to such arguments. After much reflection and investigation, we are convinced that the contention of the learned counsel cannot be sustained. The doctrine of part performance does not apply to contracts of the character here in question, but to contracts relating to land, when not to enforce the same would result in a fraud being perpetrated upon a party who has partially performed. The statute in question is aimed exclusively to the time of performance, and not to the character or subject-matter of the contract. The rule applicable to the situation here presented is enunciated in Pomeroy on Contracts (2d ed.) p. 141, as follows:

"The clause relating to contracts not to be performed within a year from the making thereof seems, by its very terms, to prevent any validating effect of part

performance on all agreements embraced within it. As the prohibition relates not to the subject-matter, nor to the nature of the undertaking, but to the time of the performance itself, it seems impossible for any part performance to alter the relations of the parties, by rendering the contract one which, by its terms, may be performed within the year. It has, indeed, been held in some cases that, if all the stipulations on the part of the plaintiff are to be performed within a year, an action will lie for a breach of the defendant's promise, although it was not to be performed within the year and was not in writing. In all these cases, however, the promise of the defendant was simply for the payment of the money consideration, which might, in every instance, have been sued for and recovered upon his implied promise; and the doctrine itself has been expressly and emphatically repudiated by numerous other decisions."

This rule is recognized by ample authority. In Osborne v. Kimball, 41 Kan. 187, 21 Pac. 163, in considering just such a contention as is here made, the court says:

"The doctrine of partial performance is not applicable to this class of contracts. It is confined only to those relating to lands, the nonexecution of which would operate as a fraud upon the party who had made partial performance to such an extent that he cannot be reasonably compensated in damages. It is an equitable principle, frequently invoked in actions for the specific performance of parol contracts for the purchase of land, under which possession had been taken, improvements made, and where there has been payment or partial payment of the purchase price. The courts are slow to introduce additional exceptions, or to depart further from the strict letter of the statute of frauds, and even in the contracts of the class mentioned full payment of the purchase money is not a sufficient performance to take them out of the statute. Nay v. Mograin, 24 Kan. 80. We have heretofore had occasion to deny the enforcement of contracts other than those relating to

land, and which were not to be performed within one year, where they had been partially performed, and we see no reason to extend the doctrine of enforcing such oral contracts upon the ground of part performance."

In another case in which the question arose the court used the following language:

"The respondent insists that there was such part performance both of the logging contract and of the hauling contract as to take them out of the statute of frauds. The doctrine of part performance, however, has no application to this clause of the statute of frauds. In the nature of the case, where the statute is directed solely to the time of performance and not to the character or subject-matter of the contract, part performance could not remove the ban of the statute without in effect repealing the statute." Union S. & T. Co. v. Krumm, 88 Wash. 20, 152 Pac. 681.

The case of Conoly v. Harrell, 182 Ala. 243, 62 South. 511, is also in point. Plaintiff and defendant entered into an oral agreement for the employment of plaintiff for a period exceeding one year, wherein it was agreed that in addition to a monthly salary the plaintiff should receive one-fourth of the net profits of the business. The court said:

"It appears from the bill that the monthly salary of complainant was paid to him up to November 1, 1907, for twelve months after the service began November 1, 1906. The contract alleged was an entirety. It was indivisible. Martin v. Massie, 127 Ala. 504, 29 South. 31. The partial (not complete) performance of the contract did not take it out of the statute of frauds. Scoggin v. Blackwell, 36 Ala. 351; Treadway v. Smith, 56 Ala. 345. The ground of the demurrer asserting that the agreement relied on was obnoxious to the statute of frauds should have been sustained."

In a note to Diamond v. Jacquith, L. R. A. 1916D, 880, the editor says:

"The rule that part performance will prevent the operation of the statute so far as performance has

gone, can, by the nature of things, have no application
to actions for the breach of contract. In such actions
recovery is based not upon what has been done under
the contract but upon the loss accruing from what has
not been done. Therefore, even in jurisdictions which
have adopted that rule, there can be found no ground
upon which to base a right of recovery for the breach of
a contract not to be performed within a year. It may
consequently be stated as a rule without exception that
the part performance of services under a parol contract
not to be performed within a year does not remove the
contract from the operation of the statute of frauds, so
that an action may be maintained for its breach, either
by the master or servant."

But counsel for respondent strenuously contend that
the defendant should be estopped from pleading and
urging the statute of frauds, and rely upon the case of
Seymour v. Oelrichs, 156 Cal. 782, 106 Pac. 88, 134 Am.
St. Rep. 154. That was a case in which Seymour, who
had a life position as captain of detectives in San Fran-
cisco, at a monthly salary of $250, entered into an oral
agreement with the defendants whereby he was to
resign as captain of detectives and accept a position
with them for ten years at a monthly salary of $300.
The defendants repudiating the contract, Seymour
brought suit. The defendants pleaded the statute of
frauds. The court held that because of the fact that
Seymour had been induced to give up his life position,
to which he could not be reinstated, defendants' refusal
to comply with the verbal agreement operated as a fraud
upon the plaintiff, and sustained the plea of estoppel.
The court said:

"The claim of plaintiff is not that mere part perform-
ance of a contract for personal services which by its
terms is not to be performed within a year, 'invalid'
under our statute because not evidenced by writing,
renders the same valid and enforceable. Such a claim
would, of course, find no support in the authorities.
Browne on Statute of Frauds, sec. 448. He necessarily

is compelled to rely solely on the claim that defendants by their conduct and promises, upon which he was entitled to and did rely, having induced him to give up his life position in the police department in order to enter their employ for a term of years at $300 a month, on the assurance from them that they would give him a written contract for such time and amount, and it being impossible for him to be placed in statu quo, are estopped from now setting up the statute of frauds as a defense to his action on the contract. Under this claim, the fact of part performance by plaintiff plays no part whatever. It was the change of position caused by his resignation from the police department upon which his claim wholly rests, and this resignation was, of course, no part of the performance of the contract of service, but was something that must be done by plaintiff before he could begin to perform, as was known to the defendants. Plaintiff's case, in this regard, would be just as strong if after his resignation he had been prevented by defendants from beginning to perform.

"The right of courts of equity to hold a person estopped to assert the statute of frauds, where such assertion would amount to practicing a fraud, cannot be disputed. It is based upon the principle 'thoroughly established in equity, and applying in every transaction where the statute is invoked, that the statute of frauds, having been enacted for the purpose of preventing fraud, shall not be made the instrument of shielding, protecting or aiding the party who relies upon it in the perpetration of a fraud or in the consummation of a fraudulent scheme.' 2 Pom. Eq. Jur., sec. 921. It was said in Glass v. Hulburt, 102 Mass. 24, 35, 3 Am. Rep. 418: 'The fraud most commonly treated as taking an agreement out of the statute of frauds is that which consists in setting up the statute against its enforcement, after the other party has been induced to make expenditures, or a change of situation in regard to the subject-matter of the agreement, or upon the supposition that it was to be carried into execution, and the

assumption of rights thereby to be acquired; so that the refusal to complete the execution of the agreement is not merely a denial of rights which it was intended to confer, but the infliction of an unjust and unconscientious injury and loss. In such case, the party is held, by force of his acts or silent acquiescence, which have misled the other to his harm, to be estopped from setting up the statute of frauds.'"

3. Accepting the rule laid down in the Seymour case for our guidance in this case (and we know of no case more favorable to the plaintiffs), without expressing any view as to its correctness, still the plea of estoppel is not available. The Seymour case turned upon the proposition that it was the change of position caused by Seymour's resignation. No change of position on the part of the plaintiffs is alleged in the complaint, or proven, nor is there any allegation or proof of any act or acts or silent acquiescence of defendant which misled the plaintiffs. They had notice as early as June, 1916, that the defendant refused to furnish horses to seed the crop of 1917. They hired the fourteen horses mentioned with knowledge of defendant's refusal to furnish horses. It certainly cannot be said that they were misled in hiring the horses, by the conduct or silent acquiescence of the defendant, nor were they led to believe by such silent acquiescence that they would get any horses whatever for the seeding and harvesting of the 1917 crop, which is the big item of damage sought to be recovered. We think the court erred in admitting the evidence, for which reason the judgment must be reversed.

It is so ordered.

## ON PETITION FOR REHEARING

By the Court, COLEMAN, C. J.:

A very urgent petition for a rehearing has been filed. It must be borne in mind that plaintiffs sought to maintain their position upon two theories only. The case was tried upon those two theories, and none other was suggested to the lower court, or to this court upon the

original hearing. Those two theories were: First, because of part performance, the plaintiffs could not recover; and, secondly, that the defendant should be estopped from setting up the statute of frauds.

The basis of the plea of part performance was the labor expended by the plaintiffs, which was of value in dollars and cents. With our view as expressed in the opinion as to the inapplicability of the plea of part performance, it does not appear from the petition for rehearing that there is any dissatisfaction; but, relative to the position taken as to the claim of estoppel, plaintiffs apparently feel greatly wronged. Their reliance upon estoppel, both in the district court and before this court was based upon the expenditures made by them in conducting their operations under their lease and the loss incident to defendant's refusal to furnish horses. It involved the identical outlay relied upon in support of the plea of "part performance." In other words, it is contended that, if this outlay in question will not support the plea of part performance, it should estop the defendant company from urging the statute of frauds. After all, it is merely part performance which is relied upon as a basis for estoppel. It is said that our former opinion does not state all the facts. It is true that we did not state just how much money plaintiffs expended in their operations under their lease; but we did not think then, nor do we think now, that such a statement was vital. We stated facts from which it must necessarily be gathered that there were certain expenditures by plaintiffs for labor, etc., in conducting their operations and we do not think it material whether they spent $500 or $2,431.

1-3. It was our view upon the original hearing, as it is now, that whatever sum they may have spent in conducting those operations did not induce a change of position by plaintiffs, but was the result of the change of position. As we said in the original opinion, the doctrine of estoppel was held to apply in the Seymour case, 156 Cal. 782, 106 Pac. 88, 134 Am. St. Rep. 154, because

of the changed position of Seymour, induced by the defendants. We held that the Seymour case was no authority in the instant case, because plaintiffs in this case did not rely upon a change in their position or prove such facts as brought them within the rule.

Though the trial court was very indulgent toward plaintiffs and permitted them to amend their complaint four or five times, there is no language in it which can, under the wildest stretch of imagination, be said to even verge upon an allegation or statement of facts tending to charge that the plaintiffs were induced to change their position because of anything done or said by the defendant; nor, if we can correctly interpret a record and briefs, did that theory ever occur to plaintiffs or their counsel until after the original opinion had been filed in this case. On petition for rehearing it is contended that each of the plaintiffs gave up positions, which meant at least $1,200 a year to them, to take the lease on the ranch. This is the first suggestion of this kind made in the case, and is not borne out by the evidence. The fact is that in making out their case no testimony was given by either of the plaintiffs concerning what they were doing or how much they were earning at the time the lease in question was entered into. This shows conclusively that the theory of changed position was not relied upon.

On cross-examination it was shown that the plaintiff Nehls had a position as a cook and was earning $45 a month, except during the haying season, when he earned $50. On cross-examination it was shown that Stanley had no permanent pursuit; that during a period covering a year prior to the execution of the lease he had been engaged in numerous employments, ranging from catching wild mustangs on his own account to breaking colts for others. It was not shown how much he earned; nor does it appear from the record that plaintiffs could not obtain the identical employment that they had when the lease was taken. Such are the facts relied upon to bring the instant case within the Seymour case. In the latter

case it appears that Seymour was induced to give up a life position paying $250 per month—one to which he could not be restored. The feature of that case distinguishing it from this one was the giving up of a life position without being able to be restored to it. No such circumstances appear in the instant case. The court says in the Seymour case:

"While the question is by no means free from doubt, we believe that it should be held that there were sufficient facts in this case to support  *  *  *  the application of the doctrine of equitable estoppel."

Though the court entertained doubt in that case as to the correctness of its conclusions, yet it is insisted that the facts in this case (which is lacking in the elements which led the court to reach the conclusion it did in that case) should impel us to hold the defendants estopped from pleading the statute of frauds. There being no similarity between the two cases, the authority relied upon does not justify the position of respondents.

The petition is denied.

DUCKER, J., having presided in the lower court, did not participate.