259 F.2d 78
 Samuel E. COHEN, Appellant,
v.
GENSBRO HOTEL CO., a Corporation; Nevada Hotel Development
Co., a Corporation; David Gensberg, Louis
Gensberg, Meyer Gensberg and Murray
Saul, Appellees.
 No. 15525.
 United States Court of Appeals Ninth Circuit.
 Sept. 15, 1958.
 
 Desser, Rau & Hoffman, Beverly Hills, Cal., Robert M. Callister, Las Vegas, Nev., for appellant.
 Morse, Graves & Compton, Ham & Ham, A. W. Ham & A. W. Ham, Jr., Las Vegas, Nev., Harvey L. Silbert, Robert Komins, Bernard M. Silbert, Los Angeles, Cal, for appellee.
 Before FEE, BARNES and HAMLIN, Circuit Judges.
 BARNES, Circuit Judge.
 
 
 1
 Plaintiff filed an action under the diversity statute entitled 'Complaint for Breach of Contract,' which alleged that certain individual defendants had organized two corporations, which allegedly needed $1,500,000 cash, and which allegedly orally agreed to sell to plaintiff (a) $1,700,000 in first mortgage bonds secured by an indenture on Nevada real estate for the sum of $1,200,000, in order to construct a hotel project; (b) a 13 per cent share of the equity in any corporation operating said hotel, for $60,000.
 
 
 2
 Plaintiff then alleged that the delivery date was May 19, 1954, and that:
 
 
 3
 '6. Plaintiff, relying on his agreement with the defendants, and at defendants' express request, engaged counsel and an accountant and, with his assistant, went to Los Angeles, California, and to Las Vegas, Nevada, to close the transaction. Plaintiff arranged, also, for deposits of large amounts of cash in his account to enable him to pay for said bonds when issued and delivered. Plaintiff, as the defendants well knew, was at all times ready, willing, and able, in every respect, to comply with and perform his part of the agreements with the defendants.
 
 
 4
 '8. Plaintiff further states that before and during the negotiations and agreement between plaintiff and defendants, plaintiff was repeatedly offered opportunities for investment of his funds and credit upon a basis profitable to plaintiff, but because of his reliance upon defendants, and at defendants' express request, plaintiff rejected all of such opportunities, not one of which is any longer available to plaintiff.'
 
 
 5
 Plaintiff further alleged defendants' refusal to 'execute any of said documents prepared, and * * * failed and refused to complete their transactions, or any part thereof' with plaintiff and alleged also, on information and belief, that:
 
 
 6
 '(7) * * * secretly and unknown to plaintiff, during their negotiations with plaintiff and prior thereto, the defendants applied for, and were attempting to obtain, financing for said hotel enterprise from other sources; that they deliberately and deceitfully intended to keep and perform their contracts with the plaintiff only in the event that they failed to obtain such other financing, and that when they became successful in obtaining other means of raising funds, they wrongfully broke and abandoned their agreements with the plaintiff.'
 
 
 7
 and prayed for damages in the sum of $500,000.
 
 
 8
 Defendants filed an answer, setting up as a first defense, that no cause of action was stated; as a second, the Statute of Frauds (no writing); as a third, usury; as a fourth, the Statute of Frauds (choses in action over $500); and as a fifth, after admitting (a) ownership of the real property involved, (b) that defendants refused to execute the documents prepared by plaintiff, and (c) that Gensberg Hotel Co. was negotiating for financing prior to May 20, 1954, denied all else in the complaint.
 
 
 9
 This answer was filed December 1, 1954. Seven months later on June 30, 1955, the defendants moved for a judgment on the pleadings
 
 
 10
 'dismissing the action upon the grounds that the complaint fails to state a claim against them upon which relief can be granted; and
 
 
 11
 'For judgment dismissing the action for lack of jurisdiction in this court.' (Tr. 14)
 
 
 12
 Previously, on February 17, 1955, there had been a pre-trial conference. An order on the pre-trial conference was proposed as of 'June-- , 1955,' but was never signed or filed. The court minutes of February 17, 1955, show that an order was issued that day giving 'defendants leave to file a motion to strike, dismiss; or otherwise.' (Tr. 15)
 
 
 13
 On November 26, 1956, an 'Order on Pretrial Conference' was filed, which ended in this manner:
 
 
 14
 'The defendants' motion for judgment on the date of entry of this Order, and their memorandum, filed February 9, 1955, may be considered as their opening brief in support of their motion. Plaintiff is given thirty (30) days from the date this order is filed to file his answering brief and defendants are given thirty (30) days thereafter to file their reply brief.'
 
 
 15
 Thus the answering brief was due from plaintiff not earlier than December 26, 1956, whereupon defendants had until January 25, 1957, to answer. We presume plaintiff's brief was filed, and that defendants' was not, though the record is silent in this respect.
 
 
 16
 On December 31, 1956, the trial court rendered its opinion on the motion for judgment on the pleadings, granting it. The court stated, among other things:
 
 
 17
 'Defendants have moved for judgment on the pleadings dismissing the action upon the grounds that the complaint fails to state a claim against them upon which relief can be granted; and for a judgment dismissing the action for lack of jurisdiction. From the motion itself and from defendants' briefs in support thereof, it is apparent that this is an attack upon the complaint. * * * (This) is in the nature of a demurrer to the complaint and all averments of fact contained in the complaint must be, and are, admitted for present purposes.'The trial court then considered the usury defense, but discarded it for his present purpose, in the following language:
 
 
 18
 'Treating the allegations of the complaint as true, the Court cannot here determine from the bare allegations of the complaint that the transaction or transactions were designed and intended for the purposes of borrowing money. To reach such a determination, evidence of the intention of the parties would have to be heard and considered.'
 
 
 19
 The trial court then considered the Statute of Frauds defense with respect to the sale of choses in action in excess of the statutory amount, without part performance or part payment. This theory was likewise discarded, with the following language:
 
 
 20
 'What was said above concerning the necessity of evidence to determine whether the alleged transaction or transactions were sales or loans applies to this contention.'
 
 
 21
 The trial court then considered the defense of the Statute of Frauds because the contract allegedly transferred land and was not in writing.[1]
 
 
 22
 The trial court cited and relied on Sleeth v. Sampson, 237 N.Y. 69, 142 N.E. 355, 30 A.L.R. 1400, 1401,[2] and concluded 'the contract or contracts pleaded in the complaint are within the provision of the statute of frauds set forth in 1529 N.C.L., 1929. Defendants are entitled to judgment as a matter of law.'
 
 
 23
 Thereafter certain correspondence took place between counsel for the plaintiff and the court. It need not be here detailed except to observe that the first letter from plaintiff's counsel was dated January 4, 1957; and the court first agreed to reconsider its order dismissing the complaint and fixed the date of January 23, 1957, for the hearing of such motion for reconsideration, but subsequently stated, under date of January 10, 1957:
 
 
 24
 '* * * Upon reflection, I have considerable doubt as to the authority of a trial court to review its own decision. Regardless of any such doubt, I feel that the court should stand upon the decision rendered. Your remedy is by appeal and I will not hear your proposed motion.'
 
 
 25
 Meanwhile, plaintiff had submitted a proposed written motion to reconsider, in which he urged his right to amend. After the trial court's change of position, plaintiff urged that even if the motion for reconsideration should not be heard, 'It would seem, under the liberal rules allowing amendments, that at the very least, plaintiff should be given leave to amend if he elects so to do.'[3]
 
 
 26
 However, on the same date this request was made the trial judge signed the judgment of dismissal. It was entered, notice given, and timely appeal brings the matter here.
 
 
 27
 Briefly, this appeal may be summarized by stating that the plaintiff first urges that the doctrine of equitable estoppel is applicable, that that doctrine need not necessarily rest either on part performance or acceptance of a part of the goods, but if there was on the part of the defendant any representation (eiter negatively by silence or affirmatively by misrepresentation), which was sufficient to create a belief that facts existed which render it unconscionable for defendants to deny the existence of a contract, and plaintiff relied thereon and acted or failed to act, then the plaintiff's complaint should not have been dismissed. This is a correct statement of law:
 
 
 28
 'The vital principle is that he who by his language or conduct leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted. Such a change of position is sternly forbidden. It involves fraud and falsehood, and the law abhors both.' Dickerson v. Colegrove, 1879, 100 U.S. 578, 586, 25 L.Ed. 618.
 
 
 29
 This theory is not limited to cases of part performance only in most jurisdictions. We are not advised if the Nevada courts have enunciated their position on it.[4]
 
 
 30
 We need not consider the second point raised by appellant (breach of an oral contract to enter into a written agreement). We hold appellant did not waive his right to amend his complaint. We do not indicate any opinion whether paragraphs 6, 7 and 8 of plaintiff's complaint, partically quoted hereinbefore, are sufficient to constitute a valid pleading of equitable estoppel. Nor do we pass on the defenses defendant may or may not be able to allege and prove. We do not even say that plaintiff can eventually state a cause of action. We do say that under the circumstances of this case the granting of the motion to dismiss was arbitrary and clearly erroneous.
 
 
 31
 The judgment is reversed, for further proceeding below consonant with this opinion.
 
 
 
 [1]
 1529 Nev.C.L., 1929, provides:
 'Every contract for the leasing for a longer period than one year, or for the sale of any lands, or any interest in lands, shall be void, unless the contract, or some note or memorandum thereof, expressing the consideration, be in writing, and be subscribed by the party by whom the lease or sale is to be made.'
 
 
 [2]
 The opinion below in this respect reads as follows:
 In Sleeth v. Sampson, 237 N.Y. 69, 142 N.E. 355, 356, 30 A.L.R. 1400, 1401, Judge Cardozo, in delivering the opinion of the New York Court of Appeals, in dealing with a statute similar to 1529 N.C.L., had the following to say:
 'An estate or interest in real property (other than a lease for a term not exceeding one year) cannot be created, granted, or assigned 'unless by act or operation of law, or by a deed or conveyance in writing.' Real Property Law (Consol.Laws, 50), 242. A contract 'for the sale of any real property, or an interest therein,' is void unless the contract, or some note or memorandum thereof, expressing the consideration, is in writing, subscribed by the grantor. Real Property Law, 259. A mortgage is a conveyance of an interest in real property within the meaning of section 242. Bogert v. Bliss, 148 N.Y. 194, 199, 42 N.E. 582, 51 Am.St.Rep. 684. A contract to give a mortgage is a contract for the sale of an interest in real property within the meaning of section 259. No doubt the word 'sale,' when applied to such a transaction is inexact and inappropriate. Our present statute comes to us by descent from the English statute (29 Car. II. c. 3, 4), which speaks of 'any contract or sale of lands, tenements, or hereditaments or any interest in or concerning them.' The change of phraseology has not worked a change of meaning. One who promises to make another the owner of a lien or charge upon land promises to make him the owner of an interest in land, and this is equivalent in effect to a promise to sell him such an interest.'
 Whether or not New York has a statutory provision similar to 9065 N.C.L., 1929, does not affect the situation here. Sec. 9065 reads:
 'A mortgage of real property shall not be deemed a coveyance, (sic) whatever its terms, so as to enable the owner of the mortgage to take possession of the real property without a foreclosure and sale.'
 We are dealing with a proposed trust indenture whereby real property would be conveyed to a trustee and such conveyances are authorized by Nevada statutes. Sec. 7710 to 7716 N.C.L., 1929.
 Judge Cardozo's treatment of the question of part performance in Sleeth v. Sampson, supra, is of interest in view of the allegations in Paragraphs 4 and 5 of the complaint which relate to what plaintiff terms definitive instruments. In referring to like matters, the Judge stated:
 'At best, the case is within the rule that acts merely ancillary or preliminary to performance are not acts of part performance within the equitable doctrine. The delivery of abstracts, putting a deed in the hands of a solicitor to prepare a conveyance, even the preparation of the conveyance, if not followed by the signing, these and like acts have been held to be inadequate.'
 
 
 [3]
 Excerpt from the letter to the trial court, dated January 11, 1957, by counsel for plaintiff. (Tr. p. 54)
 
 
 [4]
 Nehls v. William Stock Farming Co., 1919, 43 Nev. 253, 184 P. 212, rehearing denied 185 P. 563; Cf. also, Monarco v. Lo Greco, 1950, 35 Cal.2d 621, 220 F.2d 737; 3 Stan.L.Rev. 281, 288; Wilk v. Vencill, 1947, 30 Cal.2d 104, 180 P.2d 351; Wilson v. Bailey, 1937, 8 Cal.2d 416, 65 P.2d 770; Seymour v. Oelrichs, 1909, 156 Cal. 782, 106 P. 88; cf. Huber Baking Co. v. Stroehmann Bros. Co., 2 Cir., 1958, 252 F.2d 945; First Nat. Bank of Portland v. Dudley, 9 Cir., 1956, 231 F.2d 396; see Sehlaadt v. Zimmerman, 9 Cir., 1953, 206 F.2d 782
 Nehls v. William Stock Farming Co., supra (43 Nev. 253, 184 P. 214) was such a case; there the Nevada Supreme Court, in specifically differentiating the leading California case of Seymour v. Oelrichs, supra, said:
 'No change of position on the part of the plaintiffs is alleged in the complaint, or proven, nor is there any allegation or proof of any act or acts of silent acquiescence of defendant which mislead the plaintiffs.'