George M. READMOND, Jr.

v.

MATSUSHITA ELECTRIC CORP.
OF AMERICA.

Paul E. BRUNELL

v.

MATSUSHITA ELECTRIC CORP.
OF AMERICA.

James CLANCY

v.

MATSUSHITA ELECTRIC CORP.
OF AMERICA.

Civ. A. Nos. 70–663, 70–1156 and 70–1350.

United States District Court,
E. D. Pennsylvania.

Oct. 2, 1972.

As Amended Jan. 11, 1973.

On Motions to Vacate, Alter or Amend
Judgment April 3, 1973.

Fred Lowenschuss, Philadelphia, Pa., for plaintiffs.

Samuel Kagle, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

HANNUM, District Judge.

In the present actions plaintiffs allege that defendant, Matsushita Electric Corp. of America, (Matsushita) breached their oral contracts of employment. Plaintiffs' actions are brought "on the contract" demanding vindication of their expectation interests. Before the Court are defendant's motions for summary judgment pursuant to Rule 56(b), Fed.R.Civ.P., and defendant's Rule 12(f) motion to strike new matter in each plaintiff's answer to defendant's motion for summary judgment.

The pertinent facts as set forth in the complaints and answers to interrogatories are as follows:

George A. Readmond, Jr., (Readmond) was hired under an oral contract as national sales manager on an annual basis for an annual salary of $17,000 and, in further consideration of employment, he was assured that he would be named general manager of the auto products division. He started working on June 1, 1967 and was discharged on September 5, 1969. In response to defendant's interrogatory #1 that he state when and where said contract of employment was entered into he answered, "1(a) Approximately the third week of May 1967, Pan American Building, New York City, New York . . . ." In answer to defendant's interrogatory #1(b) requesting that he state each term and condition of said agreement, plaintiff answered,

"(b) Defendant sought plaintiff out through reputation and contacted plaintiff to work for them. Plaintiff requested a salary of $25,000 to start and defendant, through its representatives, stated that they did not wish to start plaintiff off at that salary but would start him off at $17,000 per year and the terms of the employment were on a yearly basis and I was assured that if I took this job that I would be general manager and vice-president of automotive products division . . . also I was to receive an annual bonus . . . ."

In response to defendant's interrogatory #2(b) to state whether the commitment or assurance that he would be named general manager of the auto products division of defendant's company, as averred in paragraph 8 of the Complaint, was confirmed by letter or other writing, plaintiff answered, "No." In answer to defendant's interrogatory 2(c) requesting that he state the precise terms of said commitment or assurances, plaintiff answered, "(c) See answer to

interrogatory 1." In addition to the claim for salary to June 1, 1970 (amounting to $16,080.00) plaintiff claims "an additional $25,000 for failure to be named general manager of auto products division of defendant's company".

During the period from May 27, 1969 to June 13, 1969, Paul E. Brunell, (Brunell) a citizen of Texas, had discussions concerning employment with defendant's representatives in Dallas, Texas. On July 17, 1969 plaintiff again conferred with defendant's representatives in New York City at which time he was told that he "was hired on an annual basis . . . in the sum of $12,000 per year, plus commissions; . . . that he would be with defendant corporation for a minimum of two years and hopefully for a much longer period of time." Brunell alleges he was assured of a training period of two years. He was employed as southeast regional supervisor based in Dallas, Texas, and he was requested to commence work on Monday, July 21, 1969. On September 12, 1969, defendant sent a letter terminating plaintiff's employment. Damages are claimed "in the sum of $24,000 plus an accounting of commissions which he would have earned". In response to defendant's interrogatory # 2, requesting each term and condition of the employment contract, plaintiff answered under oath as follows:

"2. (a) The date and place where the employment was entered into took place between May of 1969 and July of 1969 and was entered into in Dallas, Texas and New York.

(b) The agreement was both written and oral in that certain papers were signed, such as monthly salary, withholding forms, life insurance policies. I was requested to start work on July 21, 1969.

(c) The conditions were that I supervise the distributor activities over an eleven state area and set up new distribution outlets. The terms of payment for these efforts were that I would receive $1,000 a month plus a satisfactory bonus at the end of each year and at the end of two years I would be earning in the area of $16,000 a year."

In answer to defendant's supplemental interrogatory # 15 whether plaintiff received any confirmation in writing from defendant that at the end of two years he would be earning in the area of $16,000 per year, plaintiff answered in pertinent part, "I do not have confirmation in writing that at the end of two years I would be earning $16,000 per year." In answer to defendant's supplemental interrogatory # 16 as to whether plaintiff ever received any written confirmation from defendant assuring a two year training period, plaintiff answered in pertinent part, "I received no written confirmation".

James Clancy (Clancy) was employed by defendant as western regional sales manager. He commenced working on or about May 1, 1969, and on October 22, 1969 he was notified that the employment was terminated. Damages are claimed "in the sum of $17,250 plus an accounting for commissions and bonus which he would have earned". In response to defendant's interrogatory # 1 as to whether plaintiff commenced working for defendant pursuant to a written contract of employment, plaintiff answered, under oath, "No". In response to defendant's interrogatory # 2 requesting that he state each and every material term and condition of the employment contract pleaded in paragraph 7 of the Complaint, plaintiff answered, under oath, as follows:

"2. . . . We met at the International Hotel in March of 1969 and discussed the position that I was being interviewed for. It was at at this' time that we discussed money, title and contract. I told the representative of the defendant that I had just started a new position and would not leave it unless I was guaranteed a minimum of two years and that the other conditions of employment would be met. During the first

week of April, 1969 George Readmond called me long distance and advised that I was hired at $11,500 per year and he assured me that I would be with defendant corporation for a minimum period of two years and that I was to meet a Mr. Perlman at the airport with him on their way to Hawaii; this I did and Mr. Perlman confirmed Mr. Readmond's statement. There were other discussions including bonuses and the answer to this interrogatory does not include each and every statement that was made."

In answer to defendant's interrogatory # 3 to state the date and place where the employment agreement was entered into he stated, "I was reached by telephone in Los Angeles, California by George Readmond. The employment agreement was confirmed at the Los Angeles Airport in California by Mr. Perlman and Mr. Readmond in April of 1969." In answer to interrogatory # 5 as to whether he asked for or received any commission or bonuses during the entire period of employment he answered, "No. I never received a bonus or a commission. Yes, I did ask for same." In answer to defendant's supplemental interrogatory 15(b) to state each and every statement that was made with respect to said bonuses he answered, in pertinent part, as follows:

"... Some of the statements made to me occurred while I was being interviewed for the position of western regional sales manager .... in March, 1969 at the International Hotel in Los Angeles, California. I told Mr. Readmond I was not interested in the position unless it was on a basis of a yearly contract for a term of a two year period and that I would receive $11,500 per year to start plus expenses, a bonus of 1% over quotas set by Mr. Readmond .... Mr. Readmond told me that if the position was to be mine he would call and agree to the terms I had outlined but that he had other people to interview for the position before he would get back to me with a

final determination. About five days later Mr. Readmond called my home and said the position was mine under the aforementioned terms outlined. . . ."

In answer to defendant's supplemental interrogatory # 16(a) for dates when demand for payment of commissions and bonuses was made, defendant answered, "August, 1969, September, 1969 and October, 1969". In answer to defendant's supplemental interrogatory # 16(b) as to the amounts due in each such request and the basis thereof, the plaintiff answered as follows:

"I requested Mr. Anderson to send me all sales reports as I had been doing every time I talked to him or when I was in New York in person. Each time Mr. Anderson stalled me and the last time was in October of 1969 when I requested said reports to determine my bonus. I was let go without any reason on October 22, 1969 at 5:20 p. m. by an employee of defendant company who I had only met once before. At this time I told him that I wanted to get paid the balance of my contract since I was being fired without notice and for no valid reason. The employee of defendant corporation said he would look into it and I never heard from him again."

In answer to supplemental interrogatory # 16(d) asking whether the requests were verbal or in writing plaintiff answered, "Verbal in person and via 'phone". The agreement is silent as to how or when employment shall be terminated.

 A federal court in a diversity case must apply the conflict laws of the forum state. Klaxon Co. v. Stentor Eletric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The Pennsylvania choice of law rule looks to the place with the most significant relationship to the parties and the transaction on each issue. Mixing Equipment Co., Inc. v. Philadelphia Gear, Inc., 436 F.2d 1308 (3d Cir. 1971); Neville Chemical Co. v. Union Carbide Corp., 422 F.2d

1205 (3d Cir. 1970); In re Estate of Danz, 444 Pa. 411, 283 A.2d 282 (1971), Griffith v. United Air Lines, Inc., 416 Pa. 1, 203 A.2d 796 (1964). The law of New York will govern Readmond's action. The law of Texas, the state with the most significant contacts and interest, will be applied in Brunell's action, and Clancy's action will be governed by the law of California.

■■■ In the Readmond action defendant contends summary judgment should be granted because: (1) the New York Statute of Frauds [1] renders the contract void, (2) the agreement lacks mutuality, (3) the agreement was terminable at will, (4) the promises for an annual bonus and promotion to general manager within two years are indefinite and unenforceable. It is settled law in New York that:

> "[W]here one enters into the employ of another under a contract for a year's service at a yearly salary and continues in the employment after the year's end, there is available an inference or implication of fact that the parties intended to renew for another year even though the agreement, being oral and made more than a year before its expiry, was until performed unenforcible under the Statute of Frauds." Cinefot International Corp. v. Hudson Photographic Industries, 13 N.Y.2d 249, 246 N.Y.S.2d 395, 196 N.E.2d 54 (1963).

See also, Mason v. Lory Press Co., Inc., 104 N.Y.S.2d 906 (1951); Ball v. Stover, 82 Hun 460, 31 N.Y.S. 781 (1894); Adams v. Fitzpatrick, 125 N.Y. 124, 26 N.E. 143 (1891). Assuming the truth of Readmond's contention that the terms of employment under the original oral contract were on a yearly basis, the New York Statute of Frauds is inapplicable.

For the same reason, the defendant's argument that the agreement was for indefinite duration and thus terminable at will is not persuasive on a motion for summary judgment.

■■■ Defendant's argument that the alleged oral contract to employ plaintiff on a yearly basis was void for want of mutuality is without merit.

> "Even when the obligation of a unilateral promise is suspended for want of mutuality in its inception, still, upon performance by the promisee, a consideration arises 'which relates back to the making of the promise; and it becomes obligatory.'" Rubin v. Dairymen's League Co-op Ass'n, 284 N.Y. 32, 29 N.E.2d 458 (1940).

Also see, Grossman v. Schenker, 206 N.Y. 466, 100 N.E. 39 (1912); Sangani v. McKelly, 167 N.Y.S.2d 646 (1957); Jones v. Demuth Glass Works, Inc., 271 App.Div. 840, 66 N.Y.S.2d 12 (1946). Mr. Justice Cardozo considered the issue of mutuality in Wood v. Lucy, Lady Duff-Gordon, 222 N.Y. 88, 118 N.E. 214 (1917). He stated "She says that plaintiff does not bind himself to anything. * * * A promise may be lacking, and yet the whole writing may be 'instinct with an obligation.' * * * If that is so, there is a contract."

■■■ Defendant's next contention is that the promises for an annual bonus and promotion to general manager within two years are indefinite and unenforceable. Under no tenable construction of the facts could defendant be obligated to pay Readmond a specific bonus or promote him to general manager of the auto product division. "The language used was, at most, a statement of the earning potentiality of the job . . . ." Feibish v. Kaliner, 273 App.Div. 17, 75 N.Y.S.2d 78, 80 (1947).

[1]. New York General Obligations Law, McKinney's Consol. Laws, c. 24–A, § 5–701.
"Agreements required to be in writing
Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking:
1. By its terms is not to be performed within one year from the making thereof or the performance of which is not to be completed before the end of a lifetime; . . ."

As the court stated in Beverage Distributors, Inc. v. Olympia Brewing Co., 440 F.2d 21 (9th Cir. 1971), "The court cannot see by reading it any definite agreement which the law could enforce. In the language of Mr. Justice Holmes, 'On the face of it, it does not impart a legally binding promise, but rather a hopeful encouragement, sounding only in prophecy.'" See also, Bogy v. Berlage, 265 App.Div. 249, 38 N.Y.S.2d 584 (1942). Viewing the evidence most favorable to Readmond, these provisions are too indefinite for enforcement.

In summary, defendant's motion for summary judgment in the Readmond action will be granted insofar as Readmond claims damages for an annual bonus and for failure to be appointed to general manager, but the motion will be denied insofar as Readmond claims damages for his annual salary.

The Brunell and Clancy actions are, of course, factually distinct from Readmond in that each plaintiff's employment was terminated within a few months after he was hired. There is no allegation of full performance for the contract period by either of these plaintiffs.

■ Brunell and Clancy allege they were hired for "a minimum period of two years" and they seek contract damages for that period. These oral employment contracts are clearly within the Statute of Frauds [2] because they could not be performed within one year from the date of their making. Milan v.

Rio Grande & E. P. Ry. Co., 37 S.W. 165 (Ct.Civ.App.Tex.1896); Kraft v. Rooke, 103 Cal.App. 552, 284 P. 935 (1930). Professor Williston has stated:

"... [A] promise, the performance of which is to continue for a fixed period exceeding a year from the making of the contract or is not to end until the expiration of such period, must be in writing." (583) [3]

Even if this Court disregards the words "minimum of two years", the Statute of Frauds would still bar enforcement of the instant oral contracts, because they could not be performed within one year from the date of their making.

■ Plaintiffs contend that the doctrine of promissory estoppel precludes defendant from relying upon the Statute of Frauds defense, even assuming its applicability. Plaintiffs refer the Court to the Restatement of the Law of Contracts, Section 90, which provides as follows:

"Promise reasonably inducing definite and substantial action.

A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

Plaintiffs then strongly urge and rely upon Alaska Airlines v. Stephenson, 217

2. Vernon's Texas Code Annotated, Business and Commerce, Chapter 26, section 26.01 provides in pertinent part:
 (a) "A promise or agreement described in Subsection (b) of this section is not enforceable unless the promise or agreement, or a memorandum of it, is
 (1) in writing; and
 (2) signed by the person to be charged with the promise or agreement . . . .
 (b) Subsection (a) of this section applies to . . .
 (6) an agreement which is not to be performed within one year from the date

of making the agreement; . . . . ."
 West's Annotated California Code, Civil Code, Section 1624 reads in pertinent part:
 "The following contracts are invalid, unless the same, or some note or memorandum thereof, is in writing and subscribed by the person to be charged or by his agent:
 1. An agreement that by its terms is not to be performed within a year from the making thereof;"

3. 3 Williston on Contracts, § 495, 3rd ed. 1960.

F.2d 295, 15 Alaska 272 (9th Cir. 1954).[4] In that case the court stated:

"The foregoing section, [section 90] not mentioning promissory estoppel, is addressed not to the statute of frauds but to promissory estoppel as a substitute for consideration. However, when one considers the part Samuel Williston took in the formulation of the Restatement of Contracts and then examines Section 178, Comment f., one must conclude that there was an intention to carry promissory estoppel (or call it what you will) into the statute of frauds if the additional factor of a promise to reduce the contract to writing is present. Williston on Contracts, 1936 Ed., Sec. 533A."

The court in *Alaska Airlines* referred to Seymour v. Oelrichs, 156 Cal. 782, 106 P. 88 (1909), an employment case where the defendant was estopped from setting up the Statute of Frauds defense. In *Seymour* the court summarized the facts as follows:

"Practically, defendants said to plaintiff: 'We want you to enter our employ at once. We know that to do so you must give up your life position in the police department and that you are not willing to do this unless you are assured of employment for ten years at $300 a month. A written contract is, under our statute, essential to guarantee you such employment. We will execute this contract just as soon as Mr. Fair returns from Europe. Go ahead and resign your position now and commence work with us at once, and it will be all right. The written contract will be given as promised.'"

The court established the principle that would estop a party from setting up the Statute of Frauds as follows:

"A plaintiff * * * must be able to show clearly * * * not only the terms of the contract, but also such acts and conduct of the defendant as the court would hold to amount to a representation that he proposed to stand by his agreement and not avail himself of the statute to escape its performance; and also that the plaintiff, in reliance on this representation, has proceeded, either in performance or pursuance of his contract, to so far alter his position as to incur an unjust and unconscientious injury and loss, in case the defendant is permitted after all to rely upon the statutory defense."

The court further states:

"All that is meant in the expression that an estoppel must possess an element of fraud is that the case must be one in which the circumstances and conduct would render it a fraud for the party to deny what he had previously induced or suffered another to believe and take action upon."

In applying its principle to the facts in *Seymour* the court related:

"It is clear that there was such a change of position on the part of plaintiff in his irrevocable surrender of his office in the police department, induced in fact by his reliance on the promise of defendants and Fair that a written contract for 10 years at $300 a month would be given, that he will incur great injury and loss in case the defendants are permitted to rely upon the statute of frauds as a defense. That there would necessarily be such a change of position on his part in the event that he relied upon their promise and accepted their offer was known to them, and the promise was given with this knowledge and with

4. The employee in this case was given permission by the defendant to move his family to the Territory of Alaska. Plaintiff pressed his employer for a written contract because he was giving up valuable employment rights, but the defendant did not want to sign a new contract because its future success depended on getting a certificate. The court held that a jury could have found that plaintiff was orally hired with the understanding that on the granting of the certificate he would get a written contract.

the intent that it should be relied on by him and the change in his position thereby induced. The injury done plaintiff by a repudiation of the promise by defendants under these circumstances would certainly appear to be 'unjust and unconscientious.' "

Clancy's action is governed by the law of California, and viewing the evidence in a light most favorable to Clancy, it is manifest that there was not such conduct of the defendant and such "unjust and unconscientious" injury to Clancy which would render it a fraud if enforcement of the oral contract should be denied.

Texas law requires much the same showing as California before a party is estopped from setting up the Statute of Frauds. In Marek v. Goyen, Tex.Civ. App., 346 S.W.2d 926 (1961) the court discussed the applicable principle as follows:

"There is uncertainty as to the circumstances under which promissory estoppel is recognized in Texas. Note, 11 T.L.R., p. 248; 16 T.L.R., p. 569; 20 T.L.R., p. 478, and particularly as to the requirements necessary to raise an estoppel to urge the statute of frauds. However, before one can be estopped to set up the statute of frauds as a defense the conduct relied upon to create the estoppel must be characterized as fraudulent. In the absence of fraudulent intent, the one relying on the estoppel must have suffered such substantial detriment as a foreseeable consequence of the conduct that to enforce the statute would result in fraud."

See also, Cooper Petroleum Co. v. La-Gloria Oil and Gas Co., Tex.Sup., 436 S. W.2d 889 (1969), and Turtle Creek Sq., Ltd. v. New York St. Teachers Retire-

ment System, 432 F.2d 64 (5th Cir. 1970). Looking at the evidence in a light most favorable to Brunell it is manifest that there was neither fraudulent intent on the part of defendant nor such a substantial detriment to Brunell as a foreseeable consequence of defendant's conduct that to enforce the statute would result in a fraud. Plaintiffs rely on Wheeler v. White, Tex.Sup., 398 S. W.2d 93 (1966), but the Statute of Frauds was not an issue in that case. While it is most appropriate to apply Texas substantive law in the Brunell action, it is clear that the result would be the same under New York Law. See, for example, Kahn v. Cecelia Co., 40 F. Supp. 878 (2d Cir. 1941).

The Statute of Frauds renders the oral contracts of Brunell and Clancy unenforceable. Defendant Matsushita is entitled to summary judgment.

 In each of the actions at bar, plaintiff's answer to defendant's motion for summary judgment included, under the heading "new matter", a demand that defendant compensate plaintiff for monies due under the Fair Labor Standards Act.[5] "New Matter" is, of course, not a proper pleading under the Federal Rules of Civil Procedure.[6] In addition, this new allegation was added without leave of Court which was required under Rule 15(a), Fed.R.Civ.P. For these reasons defendant's motion to strike pursuant to Rule 12(f), Fed.R. Civ.P. will be granted. It is also noted that plaintiffs' new contention that defendant is liable for overtime compensation required by Section 207(a)(1) of 29 U.S.C. is tenuous at best. Section 213 of 29 U.S.C. entitled "Exemptions" provides, in pertinent part:

"The provisions of § 206 and 207 of this title shall not apply with respect to—(1) any employee employed in a

5. 29 U.S.C. § 201 et seq.

6. Rule 7 provides:
 "There shall be a complaint and an answer; a reply to a counterclaim . . ;

an answer to a cross-claim . . . ; a third-party complaint . . . , and a third-party answer . . . . No other pleading shall be allowed . . . . ."

bona fide executive, administrative, or professional capacity . . ., or in the capacity of outside salesmen (as such terms are defined and delineated from time to time by regulations of the Secretary, subject to the provisions of the Administrative Procedure Act . . .)."

The allegations of the plaintiffs set forth above clearly suggest they would be exempt from the Act.[7]

## ON MOTIONS TO VACATE, ALTER OR AMEND JUDGMENT

The Court's Order of October 2, 1972 granted summary judgment in favor of defendant, Matsushita Electric Corp. of America (Matsushita), in the contract actions brought by Paul E. Brunell (Brunell) and James Clancy (Clancy). The Court also granted summary judgment in the contract action brought by George M. Readmond, Jr. (Readmond) insofar as Readmond claimed damages for an annual bonus and for failure to be appointed general manager, but the Court denied defendant's motion for summary judgment insofar as Readmond claimed damages for his annual salary. Presently before the Court are plaintiffs' motions to Vacate, Alter, or Amend Judgment pursuant to Rule 59(e), Fed. R.Civ.P.; Plaintiff's Motion for Summary Judgment pursuant to Rule 56 (a), Fed.R.Civ.P., in the Readmond action; and Plaintiffs' Motion to Remand to Court of Common Pleas of Philadelphia.

In their first motion plaintiffs emphasize their earlier contention in the Clancy and Brunell actions that summary judgment is improper because the doctrine of promissory estoppel precludes defendant from relying upon the Statute of Frauds defense. This argument was considered at pages 1078–1080 of the Court's Memorandum of October 2, 1972.

In determining that a genuine issue of material fact did not exist, the Court considered the evidence in a light most favorable to Brunell and Clancy. The arguments and cases cited by plaintiffs in their present motion are not persuasive. Plaintiffs' initial motion also requests the Court to reconsider its determination that the promises for an annual bonus and promotion to general manager within two years alleged in the Readmond action were indefinite and unenforceable as a matter of law. The plaintiff has made no attempt to distinguish the cases cited by the Court at pages 1077–1078 of its Memorandum, and the plaintiff's argument on this point is not persuasive.

In the second motion before the Court it is requested that summary judgment be entered against the defendant in the sum of $16,080.00 in the Readmond action. Viewing the evidence in a light most favorable to the defendant, the Court cannot conclude that summary judgment is appropriate. In support of his motion plaintiff states that his original oral contract of employment, whereby he was hired during May of 1967 and commenced working on June 1, 1967, was on an annual or yearly basis for an annual salary of $17,000. Plaintiff's theory of recovery is that the original contract was renewed on a year to year basis each year thereafter until breached by defendant in September 1969. Defendant contends that Readmond was hired for an indefinite period of employment. The defendant's answers to plaintiff's interrogatories state that plaintiff was initially compensated in monthly increments amounting to an annualized salary of $17,000 but that plaintiff's rate of compensation increased on January 31, 1968 and again on April 30, 1969. While even a hiring at a certain rate per year would not, of it-

---

7. The terms "executive", "administrative", "professional" and "outside salesmen" are defined in Code of Federal Regulations, Title 29, Part 541 et seq.

self, conclusively show that the parties contemplated a fixed term of employment,[8] the irregular intervals at which plaintiff's rate of compensation was increased is additional evidence showing that a genuine issue exists as to whether the parties contemplated a fixed term of employment or an indefinite hiring terminable at will. Other issues of material fact are whether the contract was breached by defendant when it discharged plaintiff without paying him the remainder of his salary as contended by plaintiff or whether Readmond was discharged for cause as contended by the defendant; and whether plaintiff is entitled to claim damages for the alleged breach in the amount of $16,080.00, or whether damages should be limited to $6,430.58 as contended by the defendant.

The third motion is a request by plaintiffs that the Court remand plaintiffs' actions to the Court of Common Pleas of Philadelphia and vacate any and all previous judgments entered by this Court. Plaintiffs support this motion by stating that "[D]efendant now takes the position that under no circumstances may any of the plaintiffs recover a sum of $10,000.00 or more . . . ." It is well settled that the amount in controversy is measured as of the time the action comes to the federal court, and that once federal jurisdiction vests, it may not be ousted by subsequent events which reduce the award to less than the jurisdictional amount. St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938). See also, Wright, Federal Courts (2d ed.

1970), §§ 33, 38. In the above captioned consolidated cases it is clear that the jurisdictional requirement was met when these actions were removed to this Court.

---

8. *See,* 1 Williston on Contracts, § 39, 3rd ed. 1957.